**In re Bernard A. SOTTER, Debtor.**

**Bankruptcy No. 82–B–20582.**

United States Bankruptcy Court,
S.D. New York.

March 4, 1983.

Sudler & Barth, New York City, for debtor.

Richard C. Thompson, White Plains, N.Y., for Bank of New York.

DECISION ON ORDER TO SHOW CAUSE DISMISSING CHAPTER 13 OR CONVERTING CASE TO CHAPTER 7

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Bank of New York ("BNY"), a judgment creditor of the above named Chapter

13 debtor, has moved pursuant to Code § 1307 to dismiss the petition or convert the case to Chapter 7 on the ground that the debtor's filing under Chapter 13 constitutes an unfair manipulation and lacks good faith.

## FACTS

1. The debtor had been employed by the creditor, BNY, in 1978 and 1979 as a branch manager of BNY's Bedford, New York branch bank, with the title of Assistant Treasurer.

2. During the period commencing July 11, 1978 through September 28, 1979, the debtor approved ten loans on behalf of BNY for a total of $100,000 to fictitious corporations and converted approximately $12,000 to his own use.

3. The debtor was charged by the United States Attorney for the Southern District of New York with a violation of 18 U.S.C. § 1014, which makes it a felony to make false statements for the purpose of influencing a federally insured bank to issue loans.

4. In April, 1981 the debtor pleaded guilty to the charge and on June 12, 1981 he received a suspended sentence and two years' probation by a United States District Judge for the Southern District of New York.

5. On June 9, 1981, BNY obtained a civil judgment against the debtor in the Supreme Court of the State of New York, County of Westchester, in the sum of $100,000. The entry of the judgment constituted a lien upon the debtor's real property located in Yorktown Heights, New York. This property consists of a one-family residence owned jointly by the debtor and his wife.

6. On September 1, 1983, BNY commenced a proceeding in the state court to foreclose its judgment lien. On September 24, 1982, the debtor filed with this court his petition for relief under Chapter 13 of the Bankruptcy Code. The filing of the Chapter 13 petition automatically stayed the foreclosure action with respect to BNY's judgment lien, which now exceeds $111,466.66 as a result of accumulated interest.

7. The debtor values his house at $55,000, subject to a purchase money mortgage held by BNY of approximately $22,800. BNY contends that the debtor's house is worth $85,000.

8. The debtor also owes BNY an additional $2700 pursuant to a loan overdraft on a master charge account.

9. The only other creditor listed in the debtor's schedules is another bank, to which the debtor owes $2000 as a result of a personal loan.

10. The debtor is married and has a nine year old daughter. He is currently employed by a firm in a sales capacity, earning approximately $15,642.62 per year. The schedules state that his wife will seek a part-time employment to help finance his plan. The debtor's budget reflects $1152 per month for expenses, leaving him with approximately $100 per month to finance his plan. In addition to a minimal checking account maintained by his wife, the debtor also owns a 1979 Plymouth Volare and a 1972 Buick.

11. The debtor's original Chapter 13 plan provided that the debtor would maintain his monthly mortgage payments and that he would pay his two unsecured creditors, BNY and the other $2000 bank loan, $100 per month for 36 months, for a total of $3,600.

12. On October 21, 1982, BNY moved to dismiss the Chapter 13 petition on the grounds (1) that the debtor was ineligible for relief under Chapter 13 because he owed more than $100,000 in unsecured debts, as proscribed under Code § 109(c) and, (2) that his proposed plan was de minimus in that it provided for repayments of 3.27% on the unsecured debt.

13. On December 5, 1982, this court noted that the $100,000 limitation for unsecured debts might not have been exceeded because a portion of BNY's $111,466.66 judgment should have been treated as a secured claim against the debtor's house in accordance with Code § 506, with only the excess beyond the secured portion treated

as unsecured. However, the court dismissed the petition without prejudice, because the de minimus proposal in the context of the circumstances in this case was contrary to the statutory scheme underlying Chapter 13 of the Code. The basis for the dismissal is found in this court's decision in *In re De Simone,* 6 B.R. 89 (Bkrtcy S.D.N.Y.1980).

14. On November 19, 1982, the debtor filed a modified plan providing for payments of $200 per month for 36 months, for a total of $7,200. In view of the fact that BNY's motion relates to dismissal or conversion, and not confirmation, no consideration need be given at this time as to whether the debtor's budget, which reveals an excess over expenses of $100 per month, can realistically support the proposed payments. Suffice it to say that the debtor's offer to pay $200 per month for 36 months represents an earnest effort to repay his unsecured creditors within the limits of his current financial condition. It is noted, however, that the debtor has not sought permission to extend his plan over a period of 60 months, as authorized under Code § 1322(c), in which case the total payments would amount to $12,000 instead of $7,200.

15. It is also noted that BNY's foreclosure action on its judgment against the debtor would not affect the debtor's wife's joint interest in their house nor would it oust the debtor's family from possession. The foreclosure would simply give BNY the debtor's right of survivorship in the event that the debtor survived his wife. Obviously, the foreclosure would constitute a cloud on the title to the house should the debtor and his wife seek to sell it. In the interim, BNY could not sell the house out from under the debtor's wife. Thus, the Chapter 13 petition was not necessary for the purpose of saving the house in which the debtor has a joint interest. Therefore, the inescapable conclusion follows that the motivation for the Chapter 13 petition was the desire to wipe out BNY's claim, which feat could not be accomplished in a Chapter 7 case, because claims bottomed on fraud are not dischargeable under Code § 523; whereas most of Code § 523, except for

alimony or support under subsection (a)(5), is not applicable under § 1328 in Chapter 13 cases.

16. In summary, the court finds:

(a) The percentage of repayment proposed is minimal.

(b) The debtor's financial condition, as expressed in his schedules, reveals that the Chapter 13 case is not necessary to prevent his family from losing possession of their residence.

(c) The Chapter 13 petition was intended to wipe out BNY's claims rather than to repay them.

(d) The major claim against the debtor was incurred as a result of his criminal conduct.

(e) If the debtor honestly desired to maximize his repayments to BNY he could have applied to extend the period of the plan for an additional two years, for a total of five years.

(f) The debtor's right of survivorship in jointly owned real estate is not very valuable or marketable, with the result that most of BNY's judgment lien of $111,466.66 would be treated as unsecured under Code § 506. Therefore, it is likely that the debtor's unsecured claims exceed $100,000, as proscribed under Code § 109(c), and if so, the debtor would be ineligible for relief under Chapter 13.

(g) All of the foregoing factors, when considered together, point to the conclusion that the Chapter 13 petition was not filed in good faith, but instead, was filed for the purpose of sanitizing a criminal liability.

## DISCUSSION

Six Circuit Courts of Appeal have ruled in the last two years that Congress did not intend to impose a rigid and unyielding per se requirement of substantial repayment to unsecured creditors in Chapter 13 cases, nor did Congress intend that the courts should perfunctorily conclude that good faith is achieved whenever the minimum "best interests" test is met in accordance with Code § 1325(a)(4). *Barnes v. Whelan,* 689 F.2d

193 (D.C.Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982); *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Estus,* 695 F.2d 311 (8th Cir.1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.1981). However, the Eighth Circuit Court of Appeals has also held that a plan proposing no payment whatsoever to any creditor was not in good faith. *In re Terry,* 630 F.2d 634 (8th Cir.1980).

In all of the Circuit Court cases except *Memphis Bank & Trust Company v. Whitman,* supra, the debtors were not guilty of any fraudulent or dishonest conduct in incurring their obligations (although the claim in *Rimgale* was based on a nondischargeable tort). Only in the *Memphis Bank & Trust Company* case was the debtor's conduct questionable, although the court did not describe it as dishonest; merely some "puffing" as to the debtor's income in the course of purchasing an automobile on credit.

In dealing with honest debtors, the six Circuit Court decisions noted various factors that must be considered in determining whether or not a Chapter 13 plan has been filed in good faith and is not an abuse of the provisions, purpose, or spirit of Chapter 13. The abuse aspect is important because of the attractive features contained in Chapter 13 as an incentive for complete performance, i.e., the elimination of the requirement that the plan be approved by a majority of creditors and the provision for a discharge from certain debts that a Chapter 7 debtor remains obligated to pay. Some of the factors, other than the minimal percentage of repayment to unsecured creditors, that should be considered on a case by case basis in determining good faith were delineated in *In re Estus,* supra, 695 F.2d at page 317 as follows:

"(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether such debt is non-dischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee."

Although the substantiality of the debtor's repayment is not the only factor for consideration, it is nevertheless, a factor to be considered in deciding if a plan has been proposed in good faith. As stated by the Fourth Circuit in *Dean v. O'Donnell,* supra, 692 F.2d at page 972:

"Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts."

██ When the genesis of the major obligation sought to be wiped out under a Chapter 13 plan is rooted in criminal conduct, the courts must be more circumspect in weighing the crucial issue of good faith. This point was emphasized by the Sixth Circuit in the *Memphis Bank & Trust Company case,* supra, 692 F.2d at page 432 as follows:

"We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong.

.        .        .        .        .

One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. *When the debtor's conduct is dishonest the plan simply should not be confirmed.* Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty." [Emphasis added]

A literal reading of the best interest test allowed a confirmation of a 5% Chapter 13 plan in *In re Keckler,* 3 B.R. 155 (Bkrtcy N.D. Ohio 1980), when the debtor was a single woman who was a full-time student studying to be a steno-typist and who had forged checks which were stolen from her former employer to the extent of $9,363.15. She was convicted, imprisoned and subsequently paroled. Only two claims were filed in that case; one for $9,363.15 by the former employer and one for $115.14 by another unsecured creditor. The bankruptcy court allowed confirmation on the ground that the debtor was making her best effort to pay her creditors within her present economic ability, whereas her creditors would receive nothing in the event of a liquidation. However, the Sixth Circuit Court of Appeals, which embraces the district in which the *Keckler* case was decided, recently said in the *Memphis Bank & Trust Company* case, supra, 692 F.2d at page 432:

"Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and the courts must look closely at the debtor's conduct before confirming a plan.

. . . . .

When the debtor's conduct is dishonest, the plan simply should not be confirmed."

In this district a confirmation of a Chapter 13 plan in *In re Yavarkovsky,* 23 B.R. 756, 9 B.C.D. 1160 (D.C.S.D.N.Y.1982), was vacated by District Court Judge Leval because of prepetition conduct indicating connivance, contrivance and conduct inconsistent with good faith. It was concluded that the good faith requirement contemplates a broad judicial inquiry into the conduct and the state of mind of the debtor. Similarly, in the Eastern District of New York, Bankruptcy Court Judge Goetz refused to confirm a Chapter 13 plan in *In re Meltzer,* 11 B.R. 624 (Bkrtcy E.D.N.Y.1981) where the debtor proposed to pay approximately 10% to unsecured creditors, including an $8,640 judgment for unpaid parking violations. It was concluded that the debtor's plan was not within the spirit or purposes of the Code; its objective was not repayment of the debtor's obligations, but their avoidance.

█ In this case, it is most significant, that the debtor has only two scheduled creditors and that except for $2000, over $100,000 is owed to one creditor as a result of the debtor's criminal conduct. While the percentage of repayment (approximately 6%) is minimal, the net effect would be to discharge a substantial obligation that was incurred dishonestly through the literal application of the "best interests" test contained in Code § 1325(a)(4). This section provides that a confirmation of a Chapter 13 plan requires that the distribution under the plan for allowed claims be not less than the amount such claims would receive in liquidation. Manifestly, the sanitizing of a criminal liability through the rigid application of Code § 1325(a)(4) constitutes an abuse of the spirit of Chapter 13.

It is also questionable as to whether or not the debtor will be able to satisfy Code § 1325(a)(4). If this case were in Chapter 7, the trustee in bankruptcy would be empowered under Code § 363(h) to sell both the debtor's interest and the interest of the nondebtor spouse in the jointly owned real estate. The debtor's equity, less his homestead exemption, would be available for distribution to BNY as the major creditor in this case, after the payment of administration expenses. Based on BNY's valuation, the equity in the property would amount to approximately $62,200. If the debtor were to receive half, his share would amount to $31,100, less his $10,000 homestead exemption. The figure of $21,100, less administration expenses, is certainly greater than the amount offered to BNY under the Chapter 13 plan.

There is yet another reason why the debtor's plan offends the spirit of Chapter 13. The amount of the secured portion of BNY's $111,466.66 judgment, namely the debtor's joint interest in his residence with his nondebtor wife, cannot be regarded as valuable or marketable, since the interest may be wiped out if the debtor's wife survives him. In essence, an execution creditor only obtains the debtor's right of survivorship, without any present possessory interest. See *In re Weiss,* 4 B.R. 327 (Bkrtcy S.D.N.Y.1980). Therefore, for purposes of valuation pursuant to Code § 506(a), most of BNY's $111,466.66 judgment claim would be regarded as unsecured. It is therefore most likely that BNY's allowable unsecured claim against the debtor exceeds $100,000. In such case, the debtor is not eligible for relief under Chapter 13 because Code § 109(e) requires that all of the debtor's unsecured claims must be less than $100,-000.

Viewing all of the relevant factors in this case, it is concluded that the debtor's plan reveals an apparent lack of good faith and constitutes an abuse of the provisions, purpose and spirit of Chapter 13.

### CONCLUSIONS OF LAW

1. The debtor's plan is lacking in good faith and offends the provisions, purpose and spirit of Chapter 13.

2. BNY's motion pursuant to Code § 1307 is granted and the Chapter 13 petition is dismissed.

SUBMIT ORDER on notice.