**In re Joan MORTON, Debtor.**

**Bankruptcy No. 882–82667–20.**

United States Bankruptcy Court,
E.D. New York.

Sept. 18, 1984.

John Westerman, Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for debtor.

Louis P. Rosenberg, Brooklyn, N.Y., for Flushing Nat. Bank.

Richard J. McCord, Glen Cove, N.Y., Trustee.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

The debtor objects to the claim of National Bank of New York City ("National Bank") on the ground that the debtor is not indebted to National Bank. In addition, the debtor moves pursuant to 11 U.S.C. § 506(d) for avoidance of the judgment lien obtained against the debtor's real property, on the ground that the amount due upon the first and second mortgages is greater than the value of the real property.

National Bank has moved pursuant to 11 U.S.C. § 109(e) to dismiss the debtor's chapter 13 case on the ground that the debtor's unsecured debts exceed $100,000. By separate motion, National Bank prays for dismissal of the debtor's case on the

ground that the debtor has not made post-petition mortgage and tax payments.

## FACTUAL CONTEXT

In the early 1970's National Bank made several different loans and renewals to Trident Construction Corporation ("Trident"). These loans were personally guaranteed in writing by Joan Morton, the debtor herein. Trident defaulted on its obligations to repay these loans and National Bank commenced an action in a state court for the amount of the debt against Trident and its guarantors, namely, Joan Morton her husband at that time, Michael Morton, James Bonofrio, Frances Bonofrio, MCJ Holding Corp. ("MCJ"), and R.A.R., a joint venture known as Development/Trident Construction Corp. On November 25, 1975, National Bank obtained a summary judgment on this suit in the amount of $144,415.44.[1]

Subsequently, Joan Morton moved for and was granted leave to reargue the motion. In her reargument Joan Morton contended that she had entered into a novation for her original guaranty on the loans taken by Trident and that she therefore had absolved herself of any liability for Trident's debt to National Bank. The New York Supreme Court, per Judge Rodell, rejected Joan Morton's arguments and adhered to its original decision: "Despite movant's contention to the contrary, she has not made out a showing of novation of the original guaranty absolving her of liability."

In addition to defaulting on its obligations to National Bank, Trident also defaulted on its obligations to the holder of the first mortgage on certain real property owned by MCJ. Pursuant to a judgment of foreclosure, a sale of the MCJ property was held on August 25, 1977. National Bank, holder of a second mortgage on this property, successfully bid and purchased the MCJ property for $91,630. Months later National Bank sold this property for $163,685.

Thereafter, Trident, Michael Morton and Joan Morton brought an action for equitable relief from National Bank's original judgment against them, alleging that National Bank received payment in full as a result of its resale of the MCJ property. This case was not prosecuted and was dismissed with prejudice on May 22, 1982.

## OBJECTION TO CLAIM

On October 26, 1982 Joan Morton petitioned for relief under Chapter 13 of the Bankruptcy Code. National Bank filed a secured claim based on the original judgment and lien arising therefrom which remains unsatisfied. Morton now moves to challenge the validity of National Bank's claim against her. Morton contends that in 1972 she withdrew all personal guarantees on the debts of Trident and that she informed National Bank of this novation in a letter dated January 23, 1972. Morton also contends that at the time of the original proceeding against her she was involved in a divorce proceeding with Michael Morton. She alleges that her divorce attorney advised her to take an inactive role in the National Bank matter because it would jeopardize her divorce proceeding, and that consequently she was largely unaware of the proceedings brought against her. National Bank contends that their claim cannot be assailed because it is based on the judgment of November 25, 1975 which National Bank argues is *res judicata* in this proceeding.

Under 28 U.S.C. § 1738 a bankruptcy court shall give full faith and credit to a prior final state court action. The principle of *res judicata* provides "that a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand." *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir.1968). It is, therefore, axiomatic that a "litigant in federal court is precluded from relitigating issues which were litigated and determined ad-

---

1. This judgment presently exists as a lien against Joan Morton's real property located at

95 Manetto Road, Huntington, New York.

**218**

versely to him in the prior state court proceeding...." *Winters v. Lavine,* 574 F.2d 46, 57 (2d Cir.1978). *Matter of Farrell,* 27 B.R. 241, 243 (Bankr.E.D.N.Y.1982).

Joan Morton contends that *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), gives this court the power to inquire into the validity of the prior judgment against her and redetermine her liability for the debt owed to National Bank. She asserts that "where the facts and circumstances of a judgment lien claim are uncertain and invite questioning, the *Pepper* decision indicates a Bankruptcy Court has an equitable duty to inquire into the validity of the claim."

The Court in *Pepper* held that a "bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence." 308 U.S. at 305, 60 S.Ct. at 244. The *Pepper* decision also provided that a bankruptcy trustee could attack a judgment offered as a claim against an estate "for the purpose of showing that it was obtained by collusion of the parties or is founded upon no real debt." *Id.* at 306, 60 S.Ct. at 245.

■ The phrases "without lawful existence" and "no real debt" are ambiguous and led the Court to clarify the *Pepper* holding in *Heiser v. Woodruff,* 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946). The *Heiser* holding recognized the general equitable powers of a bankruptcy court and the two specific grounds upon which a proof of claim based on a prior judgment could be challenged. The two grounds were: (1) want of jurisdiction of the court which rendered it over the persons or the parties or the subject matter of the suit; and (2) procurement of the judgment by fraud. 327 U.S. at 736, 66 S.Ct. at 857. While the Court in *Heiser* recognized these two equitable grounds upon which a prior judgment could be challenged in a bankruptcy court, it also expressly held that the bankruptcy court was still bound by the principles of *res judicata. Id.* at 737, 66 S.Ct. at 858. The *Heiser* holding clarified the rule of *Pepper* and provided a strong caveat against expanding *Pepper's* perimeters. *See Matter of Farrell,* 27 B.R. 241, 245 (Bankr.E.D.N.Y.1982).

■ The claim by National Bank against the debtor has been challenged by her twice before; first at the time of National Bank's original action on the note, and second when she challenged National Bank's judgment on equitable grounds after the purchase and resale of the MCJ property. The debtor does not assert want of jurisdiction or fraudulent procurement of the judgment. In view of her defense in the original action, her challenge to the summary judgment, and her action in equity, the debtor's contention that she was largely unaware of the proceedings by National Bank against her is untenable. To disregard her prior challenges and give her another hearing on this issue would nullify the salutary principle of *res judicata.* Therefore, the debtor's objection to National Bank's claim must be denied.

## MOTIONS TO DISMISS

National Bank's first motion to dismiss is pursuant to 11 U.S.C. § 109(e), which states:

> Only an individual with regular income that owes, on the date of the filing of the petition, ... debts of less than $350,000 ... may be a debtor under chapter 13 of this title.

Specifically, National Bank alleges that it is a secured creditor in the sum of $144,-415.14; said debt being predicated upon a judgment entered on November 5, 1975 in the Supreme Court, Queens County and docketed in the Suffolk County Clerk's Office on December 10, 1975. National Bank correctly notes that the debtor filed its chapter 13 petition and accompanying schedules listing secured creditors in excess of $300,000 and the value of her sole asset as $110,000. National Bank argues therefrom that by the debtor's own admission, over $190,000 of the debt held by her secured creditors was unsecured, thereby disqualifying her from relief under chapter 13. National Bank is ostensibly relying on

11 U.S.C. § 506(a), which provides that a creditor's allowed claim secured by a lien on property is only a secured claim to the extent of the value of such creditor's interest in the property, and is an unsecured claim to the extent that the value of the creditor's interest is less than the amount of such allowed claim. Thus, according to National Bank, if the property securing $300,000 of debt is admittedly worth only $110,000, the debtor has over $190,000 of unsecured debt, in contravention of the $100,000 unsecured debt limit in 11 U.S.C. § 109(e).

The surface appeal of National Bank's arguments are vigorously attacked by the debtor. Debtor argues that the term "unsecured debt" in section 109(e) has a different meaning than the term "unsecured claim" in section 506(a). Essentially, the debtor argues that a secured claim becomes an "unsecured claim" only after a claim is filed and after the claim withstands any objections pursuant to 11 U.S.C. § 502. Only after these events, the debtor argues, may there exist an unsecured claim arising from bifurcation of formerly secured debt. The debtor emphasizes the language in 109(e) that refers to debt owed "on the date of the filing of the petition." The debtor argues that such a time focus precludes considering the amount of filed and allowed unsecured *claims* when calculating the amount of unsecured *debt* existing upon filing.

■ The court perceives the issue involved herein as a narrow one, namely whether that portion of an allowed *claim* rendered unsecured pursuant to 11 U.S.C. § 506(a) should be considered unsecured *debt* of the debtor in a determination under 11 U.S.C. § 109(e).

Neither party has presented the court with any court decisions elucidating the issue. The court has found, however, three reported decisions concerning the issue. In *In re Sotter*, 28 B.R. 201, 206 (Bankr.S.D. N.Y.1983), the court based its dismissal of a chapter 13 petition on alternate grounds; the first being the lack of good faith in the debtor's plan, and the second being the fact

that the debtor's unsecured debt exceeded $100,000. Without addressing the issue before this court, the *Sotter* Court simply relied upon 11 U.S.C. § 506(a) to find the creditor's $111,466.66 judgment claim unsecured, and concluded therefrom that the debtor was ineligible for relief under chapter 13. 28 B.R. at 206.

The court in *In re Bobroff* converted the debtor's chapter 13 case to one under chapter 7, after it determined that the unsecured claims against the debtor totalled over $100,000. 32 B.R. 933, 935–36 (Bankr. E.D.Pa.1983). Again the court did not address the issue, but merely stated that the determination of the section 109(e) motion "requires the use of 11 U.S.C. § 506(a)."

The only reported decision offering an analysis of the issue is *In re Ballard*, 4 B.R. 271 (Bankr.E.D.Va.1980). In that opinion, Judge Shelley cited the following language in which two Congressmen issued identical statements utilizing the term "secured claim" in the context of section 109(e):

§ 109(e) represents a compromise between H.R. 8200 as passed by the House and the Senate amendment relating to the dollar amounts of restricting eligibility to be a debtor under chapter 13 of title II. The House amendment adheres to the limit of $100,000 placed on *unsecured debts* in H.R. 8200 as passed by the House. It adopts a midpoint of $350,000 as a limit on *secured claims*, a compromise between the level of $500,-000 in H.R. 8200 as passed by the House and $200,000 as contained in the Senate amendment.

4 B.R. at 274–75 (emphasis added). Although the quote may merely contain a misstatement, it was made by both Senator DeConcini and Congressman Edwards, introducers of the final versions of the bills of their respective Houses of Congress.

Not finding the legislative history conclusive, the court in *Ballard* compared the definitions of "claim" and "debt" in the bankruptcy code to conclude that a "debt" as referred to in section 109 represented the same liability as a claim referred to in

section 506(a). *Id.* at 274. From that point the court concluded that a creditor claiming more than the value of the security for his claim creates both a secured debt and an unsecured debt for the purposes of section 109.

This court agrees that the definitions of "claim" and "debt" in the bankruptcy code reveal that they represent the same liability. A claim is essentially a right to payment. 11 U.S.C. § 101(4). A debt is a liability on a claim. 11 U.S.C. § 101(11). The legislative history to section 101(11) states that the "terms are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977) 310, U.S.Code Cong. & Admin. News 1978, pp. 5287, 6267; *see* S.Rep. No. 989, 95th Cong., 2d Sess. (1978) 23, U.S.Code Cong. & Admin. News 1978, p. 5809.

The court does not agree, however, that because claim and debt are the opposite sides of the same coin, that section 506(a) applies to a determination under section 109(e). As the debtor points out, section 506(a) only provides for bifurcation of an *allowed* claim. A claim is only deemed *allowed* if it has been filed and has not been objected to by any party in interest. 11 U.S.C. § 502. If a determination under section 109(e) required bifurcation of claims, then such a determination could only be made after all claims had been filed and all objections that had been made thereto were resolved. The last date set for the filing of claims is 90 days after the first date set for the meeting of creditors called pursuant to 11 U.S.C. § 341(a). Bankruptcy Rule 3002(c). Furthermore, such time may be extended under certain circumstances. *See id.* There is no time limit prescribed for objections to claims. *See* B.R. 3007. It would be anamolous to believe that Congress intended that a determination of whether a debtor was eligible for chapter 13 would have to be delayed until the case has substantially progressed.

■ The debtor herein has expended crucial resources in the formulation and implementation of her plan of reorganization. Furthermore, because her plan has been confirmed, her efforts may not be channeled into a chapter 11 reorganization. *See* 11 U.S.C. § 1307(d) (case under chapter 13 may be converted to one under chapter 11 anytime before confirmation of a plan). A creditor should bring on a § 109(e) motion in the first instance that it has the information that the debtor's debts may exceed the allowable limits. Likewise, such motions should be decided in the first instance and should not require consideration of events necessarily occurring post-petition, and often occurring after the debtor and other parties in interest have expended relatively large amounts of time, money, and effort toward the debtor's reorganization.

National Bank's motion was filed on February 29, 1984, which is almost one and one-half years after the debtor filed her petition. The information upon which National Bank bases its motion was available shortly after the debtor filed her petition. Whereas such delay would normally call for invocation of the doctrine of laches, it is the court's opinion that such a ruling is unnecessary because Congress did not intend section 109(e) to be construed so as to encourage such inequitable delay. The focus of section 109(e) is of *debts* existing at the time of filing while the focus of section 506(a) is of *claims* existing and *allowed* well beyond the filing date. The court rules, therefore, that National Bank has failed to prove that the debtor had over $100,000 of unsecured debts on the date of filing. National Bank's first motion to dismiss is consequently denied.

■ In National Bank's second motion to dismiss, it alleges that the debtor is not making current mortgage payments to the two mortgagees and that the debtor is not paying current tax obligations. National Bank argues therefrom that the equity in its security is being diminished. In addition, National Bank alleges that the debtor has defaulted in the payment required to be made pursuant to her plan.

The court must deny National Bank's motion for the simple reason that they have not offered any proof that current

mortgage payments are not being made. In addition, National Bank has not requested a further opportunity to present evidence. As to its second allegation, the Trustee has indicated that the debtor is current on her plan payments.

## 506(d) MOTION

The debtor moves the court for an order declaring the judgment lien of National Bank void pursuant to 11 U.S.C. § 506(d). This motion must be denied without addressing the merits. Such relief can only be granted pursuant to an adversary proceeding. *See* Bankruptcy Rule 7001(2) (determination of the validity, priority, or extent of a lien other than a proceeding under Bankruptcy Rule 4003(d)).

## CONCLUSION

It is HEREBY ORDERED, that

(1) The debtor's motion seeking disallowance of the claim of National Bank is denied.

(2) National Bank's motions seeking dismissal of the debtor's petition are denied.

(3) The debtor's motion to have National Bank's judgment lien declared void is denied.