In the Matter of Gary Michael MARTIN, Sharon Lee Martin, Debtors.

FIRST BANK, NATIONAL ASSOCIATION, Plaintiff,

v.

Gary Michael MARTIN, Sharon Lee Martin, Defendants.

Bankruptcy No. 86–3085–W.

United States Bankruptcy Court, S.D. Iowa.

Sept. 29, 1987.

Oliver B. Pollak, Omaha, Neb., for debtors.

Frank W. Pechacek, Jr., Council Bluffs, Iowa, for First Bank, Nat. Assn.

J.W. Warford, Des Moines, Iowa, trustee.

## MEMORANDUM OF DECISION AND ORDER

LEE M. JACKWIG, Bankruptcy Judge.

On March 12, 1987 a motion to dismiss the Chapter 13 case and an objection to exemptions filed on behalf of First Bank, National Association (First Bank) came on for hearing before this court in Council Bluffs, Iowa. The court also heard on March 12, 1987 the debtors' motion to stay the adversary proceeding (Adv.Pro. No. 86–0287) and a resistance thereto by First Bank. Frank W. Pechacek, Jr. appeared on behalf of First Bank and Julia A. Frank appeared on behalf of the debtors. The Chapter 13 trustee, Joe W. Warford, was also present. At the close of the hearing the court took all pending matters under advisement.

## BACKGROUND

The history of this case is quite complicated. The debtors, Gary and Sharon Martin, originally filed a petition for relief under Chapter 7 on November 7, 1986 in the United States Bankruptcy Court for the District of Nebraska. The debtors' petition listed secured debts in the sum of $284,346.35 and unsecured debts in the sum of $287,110.94. The court notes that the debtors' two Nebraska corporations also filed Chapter 7 petitions in the District of Nebraska.

On September 12, 1986 the First Bank and the Nebraska State Bank, as first and second mortgage holders on the debtors' homestead, filed a motion to modify stay. A hearing was held on the motion on October 6, 1986 and relief was granted by Bankruptcy Judge Timothy J. Mahoney. On September 12, 1986 the Banks also moved to dismiss the case or to have venue transferred to the Southern District of Iowa, the domicile of the debtors. A hearing was held on the Banks' motion on November 3, 1986 and Judge Mahoney ordered the case transferred to this district. An objection to exemptions filed on behalf of the First Bank on October 15, 1986 was continued for hearing before this court.

On November 17, 1986 a trustee was appointed to this case in the Southern District of Iowa, Western Division. Also on November 17, 1986, the First Bank filed an adversary complaint to determine dis-

chargeability of debts. Discharge was entered on December 17, 1986 and the trustee filed a report of no assets to distribute on January 2, 1987.

On January 7, 1987 the debtors filed a motion to convert from Chapter 7 to Chapter 13. On January 15, 1987 the discharge entered December 17, 1986 was vacated. The debtors' motion to convert was granted routinely on January 26, 1987. The debtors' Chapter 13 petition filed on January 26, 1987 listed secured debts in the sum of $288,979.35 and unsecured debts in the sum of $15,200.35. On February 10, 1987 the debtors filed a motion to stay the adversary proceeding commenced by the First Bank asserting that the complaint to determine dischargeability was inappropriate unless and until such time as the debtors make application for a hardship discharge under 11 U.S.C. section 1328. The First Bank resisted the debtors' motion on February 18, 1987 asserting that the debtors are not eligible to file a Chapter 13 and that the sole purpose of such filing was to avoid the Bank's adversary complaint.

In its motion to dismiss the Chapter 13 case filed on February 19, 1987, the First Bank contends that the debtors have unsecured debts to the First Bank alone in excess of $100,000.00 and therefore do not qualify as Chapter 13 debtors. The First Bank notes that its debt was listed in the debtors' schedules as secured and in the amount of $265,346.35. The Bank further asserts that the value of the collateral securing this debt as shown on the schedules is so inadequate that its debt is over $200,-000.00 unsecured. The debtors respond by noting that their schedules were amended upon their conversion from Chapter 7 to Chapter 13. According to the debtors, their Chapter 13 schedules eliminated debts owed by the debtors' corporations, thus substantially reducing their unsecured debt. With regard to the First Bank's argument that its debt is partially unsecured, the debtors argue that the portion of a secured creditor's claim which is rendered unsecured pursuant to 11 U.S.C. Section 506(a) is not to be considered unsecured debt in the determination of eligibility under 11 U.S.C. section 109(e).

## ANALYSIS

The matters pending before this court are interrelated. A determination of whether the debtors meet the Chapter 13 eligibility requirements under 11 U.S.C. section 109(e) will resolve most of the issues presented. Section 109(e) provides:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 ... may be a debtor under Chapter 13 of this title.

Bankruptcy courts disagree on the issue of what portion of an undersecured debt should be considered secured for purposes of section 109(e). Some courts have consistently examined the true value of collateral securing a debt when evaluating a debtor's eligibility for Chapter 13. *See In re Day,* 747 F.2d 405 (7th Cir.1984); *In re Bobroff,* 32 B.R. 933 (Bankr.E.D.Pa.1983); *In re Ballard,* 4 B.R. 271 (Bankr.E.D.Va. 1980). Those courts would include as a secured debt only that amount of the debt which does not exceed the value of the collateral.

Other courts, however, hold that the whole portion of the debt should be considered secured for the section 109(e) computation, and that the court should look only to the debtor's schedules to determine if they were filed in good faith. *See In re Morton,* 43 B.R. 215 (Bankr.E.D.N.Y.1984); *In re King,* 9 B.R. 376 (Bankr.D.Or.1981). See also *Matter of Brown,* No. 82–1857–C, unpublished op. at 7 (Bankr.S.D.Iowa, filed Oct. 7, 1986). Those courts distinguish a "debt" for purposes of section 109(e) from a "claim" for purposes of section 506(a). Of major concern to these courts is the potential delay of a determination of eligibility, through a formal determination of secured status, until the case has substantially progressed toward the debtor's reorganization. *In re Morton,* 43 B.R. at 220.

The debtors' original Chapter 7 petition disclosed unsecured debts far in excess of

$100,000. The Schedule B indicated that Nebraska State Bank held a first mortgage on the homestead in the amount of $19,000.00 and that the First Bank held a second mortgage on the homestead in the amount of $265,346.35. The fair market value of the property was $25,000.00. Undoubtedly, this lack of equity prompted the Nebraska court to lift the automatic stay after hearing on October 6, 1986.

The debtors' subsequent Chapter 13 petition reflected a dramatic decline in unsecured debt. Although the debtors assert that the change is due to the elimination of solely corporate debt, no supporting documentation has been presented. Moreover, the debtors' Schedule B again reflects debts to Nebraska State Bank in the amount of $19,000.00 and to the First Bank in the sum of $265,346.35 but now reports a fair market value of the collateral as $40,000.00.

Even if the undersigned adopted the theory that the petition, schedules and plan should be looked at to determine eligibility under section 109(e), the petition, schedules and plan in this case show on their face, without a hearing to determine secured status, that a large portion of the debt owed to the First Bank is unsecured. *See Matter of Koehler*, 62 B.R. 70, 72 (Bankr.D. Neb.1986); *Matter of Wulf*, 62 B.R. 155, 158 (Bankr.D.Neb.1986). In addition, the plan carries out the scheme of the schedules to pay the Bank only the value of its collateral by surrendering the collateral back to the Bank. *Koehler*, 62 B.R. at 72. To ignore the apparent value of collateral securing a creditor's debt would elevate form over substance. *Matter of Day*, 747 F.2d at 407. That is, when the unsecured portion of the First Bank's debt is added to the scheduled unsecured debt of $15,200.35, the debtors' unsecured obligations far exceed $100,000.00. Accordingly, the debtors are not eligible to be Chapter 13 debtors.

Although First Bank has asked for dismissal of the Chapter 13 case, the interests of creditors and the estate would be best served by vacating both the January 26, 1987 order granting the conversion and the January 15, 1987 order vacating the dis-

charge in the Chapter 7 case. 11 U.S.C. § 1307(c) and 11 U.S.C. § 105(a). Accordingly, the debtors' motion to stay the adversary proceeding is moot. Likewise, the objection to exemptions will be rescheduled for hearing to clarify the status of the disputed items.

CONCLUSION AND ORDER

WHEREFORE, based on the foregoing analysis, it is hereby found that the debtors do not qualify to be debtors under Chapter 13. It is further found that reinstatement of the Chapter 7 case rather than dismissal of this matter is in the best interest of creditors and the estate.

THEREFORE, it is hereby ordered that:

1. The January 26, 1987 order granting conversion to Chapter 13 is vacated.

2. The January 15, 1987 order vacating the Chapter 7 discharge is set aside and the discharge is reinstated.

3. The debtors' motion to stay Adversary Proceeding Number 86–0287 is moot.

4. The objection to exemptions shall be scheduled for further hearing.