**In re Marie C. PROSPER, a/k/a Mary Prosper, Debtor.**

**Bankruptcy No. 93–51364.**

United States Bankruptcy Court, D. Connecticut.

June 29, 1994.

Jeffrey L. Sapir, Chapter 13 Trustee, White Plains, NY.

Maria G. Raus, Freccia & Plotkin, Stamford, CT, for debtor.

## MEMORANDUM AND ORDER ON CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

ALAN H.W. SHIFF, Bankruptcy Judge.

The chapter 13 trustee objects to the confirmation of the debtor's chapter 13 plan, alleging that the debtor is not eligible for relief under chapter 13. *See* 11 U.S.C.A. § 109(e) (West 1993). I agree.

### BACKGROUND

The debtor filed a chapter 13 petition on April 23, 1993 (the "Filing Date"). On May 19, 1993, the debtor filed schedules. Schedule A, Real Property, stated that the debtor's sole real property asset was her residence which had a market value of "$130,000.00 (approx.)." Schedule C, Property Claimed As Exempt, stated that the value of the residence was $158,000.00. However, because the $130,000.00 value was used consistently elsewhere in the schedules and in the Stipulation (defined below), it is apparent that the $158,000.00 figure was an error. Schedule D, Creditors Holding Secured Claims, stated that there were eight claims which purported to be secured by the resi-

1. Schedule A stated that the total of the Nominally Secured Claims was $180,530.81. That is

dence, and stated the portion, if any, of each claim that was unsecured, as follows:

1. Great Western Bank, first mortgage, $129,000.00, fully secured.

2. City of Stamford, real estate taxes, $1,334.72, secured to the extent of $1,000.00, and unsecured to the extent of $334.72.

3. Yale New Haven Hospital, judgment lien, $38,744.80, wholly unsecured.

4. Yale University School of Medicine, judgment lien, $2,573.69, wholly unsecured.

5. Lynne Lane, second mortgage, $400.00, wholly unsecured.

6. People's Bank, judgment lien, $1,245.83, wholly unsecured.

7. Southern Connecticut Gas Company, judgment lien, $1,265.31, wholly unsecured.

8. City of Stamford, Department of Social Services, relief lien, $5,666.46, wholly unsecured.

Schedule D stated that those claims (the "Nominally Secured Claims") totalled $180,-230.81.[1] Schedule D thus showed that several of the Nominally Secured Claims were in fact unsecured (the "Schedule D Unsecured Claims") to the extent of $50,230.81.

Schedule F, Creditors Holding Unsecured Nonpriority Claims, stated three unsecured debts totalling $89,874.30 (the "Schedule F Unsecured Claims"). On May 20, 1993, the debtor filed an amendment to Schedule F to add two more unsecured debts; however, it appears that those debts had already been disclosed on the original Schedule F. The sum of the Schedule D Unsecured Claims and the Schedule F Unsecured Claims was $140,105.11 (the "Scheduled Unsecured Claims").

On May 26, 1993 the debtor filed a chapter 13 plan which proposed no distribution to holders of allowed unsecured claims. On June 2, 1993, the debtor filed an amendment to Schedules A and D adding the ninth and tenth Nominally Secured Claims as follows:

9. Yale University School of Medicine, judgment lien, $3,143.60.

another apparent error.

10. Yale University School of Medicine, judgment lien, $3,680.49.

While the status of those claims was not specified, it is apparent that they were wholly unsecured, bringing the total of the Scheduled Unsecured Claims to $146,929.20.

The following proofs of claim were filed:

1. Yale University School of Medicine, judgment lien, $3,981.69.

2. Yale University School of Medicine, judgment lien, $2,756.69.

3. Great Western Bank, first mortgage, prepetition arrearage of $15,317.12, total indebtedness of $146,700.91.

4. Southern Connecticut Gas Company, judgment lien, $1,429.97.

5. Connecticut Department of Revenue Services, unsecured priority tax claim, $1,081.25.

6. Lynne Lane, second mortgage, $400.00 (filed by the debtor).

7. City of Stamford, relief lien, $5,666.46 (filed by the debtor).

8. Yale New Haven Hospital, judgment lien, $38,744.80 (filed by the debtor).

9. City of Stamford, tax lien, $2,725.50 (filed by the debtor).

10. People's Bank, judgment lien, $1,245.83 (filed by the debtor).

On September 23, 1993, the debtor filed a Motion to Determine Value of Collateral and Treatment of Secured Claims under § 506(a), *see infra*, p. 277 (the "506(a) Motion"). The 506(a) Motion stated that the value of the residence was $75,000.00, referenced an appraisal dated April 23, 1993 which allegedly supported that value, and stated that the residence was encumbered by claims 1 through 4 and 6 through 10 in the amounts specified in the proofs of claim. Contrary to those statements, the referenced appraisal, dated November 4, 1992, actually stated that the value of the residence was $158,000.00 as of that date. The 506(a) Motion sought an order "avoiding all encumbrances against the collateral, subsequent in priority to Great Western Bank's mortgage...." On Septem-

ber 28, 1993, the debtor filed a First Amended Chapter 13 Plan which proposed to treat the Great Western first mortgage arrearage and the City of Stamford tax lien in the amount of $2,725.50 as secured claims. All other claims were to be treated as unsecured claims and would receive no dividend. The amended plan stated that those unsecured claims totalled $54,225.44. That figure apparently did not include the Schedule F Unsecured Claims in the amount of $89,-874.30.

On September 29, 1993, the debtor filed an objection to the unsecured priority tax claim of the State of Connecticut. That objection was sustained by a November 3, 1993 order. On December 7, 1993, the debtor filed a Second Amended Chapter 13 Plan, which reflected reduced payment due to the elimination of the State of Connecticut tax claim, but was otherwise identical to the First Amended Plan.

In the absence of objection, the 506(a) Motion was granted following a November 3, 1993 hearing. An order to that effect entered on December 27, 1993 (the "506(a) Order"). The 506(a) Order determined that the value of the residence was $75,000.00; that all claims, other than the Great Western Bank mortgage in the amount of $146,700.91, and the City of Stamford tax claim in the amount of $2,725.50, were unsecured; and that the liens which purported to secure them were void.[2] The claims determined to be unsecured by the 506(a) Order totalled $54,225.44 (the "506(a) Unsecured Claims"). The 506(a) Unsecured Claims, added to the Schedule F Unsecured Claims of $89,874.30, totalled $144,099.74 (the "Determined Unsecured Claims").

On January 10, 1994, the debtor and the chapter 13 trustee filed a Stipulation of Facts Re: Confirmation of Debtor's Second Amended Chapter 13 Plan (the "Stipulation"). The Stipulation acknowledged that the debtor had scheduled $180,230.81 in non-contingent, liquidated secured debts; that

---

2. Because of the holding in *Nobelman v. Am. Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), as interpreted by this court in *In re Hornes,* 160 B.R. 709 (1993), the debtor was precluded from treating as unsecured any claims which were even partially supported by value in her residence.

the value of the security was stated to be approximately $130,000.00; that the schedules stated $89,874.30 in noncontingent, liquidated unsecured debts; and that the value of the residence asserted in the 506(a) Motion and established by the 506(a) Order was $75,000.00. Those facts are presumed to be correct, and on that basis I conclude that the following documents contained errors: (i) the statement in Schedule C that the value of the residence was $158,000.00; (ii) the May 20, 1993, amendment to Schedule F, adding unsecured debts which were already scheduled; and (iii) the attachment to the 506(a) Motion of an appraisal showing the value of the residence to be $158,000.00. I also assume that on the Filing Date the debtor owed the Schedule F Unsecured Claims.

## DISCUSSION

Section 109(e) provides in relevant part: Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 ... may be a debtor under chapter 13 of this title.

11 U.S.C.A. § 109(e) (West 1993). Section 506(a) provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C.A. § 506(a) (West 1993).

The issue is whether all of the Nominally Secured Claims should be treated as "secured debts" under § 109(e) so that the debtor's unsecured debts were under $100,000.00 as of the Filing Date, notwithstanding the debtor's schedules, the 506(a) Motion, the 506(a) Order, and the proposed plan, which treat some of those claims as unsecured. For the reasons that follow, I conclude that the 506(a) Unsecured Claims should be added to the Schedule F Unsecured Claims in calculating the total unsecured debt owed on

the Filing Date, with the result that the debtor is not eligible.

In *In re Hornes*, 160 B.R. 709, 711–12 (Bankr.D.Conn.1993), I noted that the term "secured claim" may be construed in two ways. First, it may be construed in the "literal" sense, that is, a claim is "secured" if there is a lien which purports to provide security for the claim. Second, it may be construed in the "code" sense, that is, a claim is "secured" to the extent that, after valuing the collateral and subtracting valid superior liens, there actually exists some value to secure the claim; to the extent such value does not exist, the claim is "unsecured." I will use the same terminology here.

Section 109(e) limits chapter 13 eligibility to individuals who owe "on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,-000...." Whether or not the debtor is eligible turns on the meaning of the term "unsecured debts" in § 109(e). If that term is used in the code sense, i.e. if it includes the unsecured portion of undersecured debts, the debtor is not eligible; if, on the other hand, that term is used in the literal sense, i.e. if it refers only to debts which did not, on the petition date, even purport to be secured by any lien or security interest, then the debtor is eligible.

I adopt the former reading as more faithful to the code's plain language. The statutory interpretation at issue here is similar to the question presented to the Second Circuit in *Bellamy v. Fed. Home Loan Mortgage Corp. (In re Bellamy)*, 962 F.2d 176 (2d Cir.1992). There, the court considered whether the term "secured claims" in § 1322(b)(2) referred to whether the claims were supported by a security interest, or whether there was actually value to support the claims. *Id.* at 183. The court opted for the latter interpretation as consistent with the use of the term "secured claim" in § 506(a). The court also found that "it is reasonable to assume 'secured claim' ordinarily has the meaning assigned to it in § 506(a), unless to read it in that fashion would be 'contrary to basic bankruptcy principles.'" *Id.* at 182 (citing *Dewsnup v.*

*Timm,* —— U.S. ——, ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992)).

While the Supreme Court in *Nobelman v. Am. Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) overruled *Bellamy* in part, I have previously concluded that *Nobelman* supported *Bellamy*'s holding that §§ 506(a) and 1322(b)(2) use the term "secured claim" in the code sense. *In re Hornes, supra,* 160 B.R. at 712–16.[3] Thus, under *Bellamy* and *Nobelman* the term "unsecured claim" in § 506(a) includes the unsecured portion of an undersecured claim. Although § 109(e) uses the term "debts" and § 506(a) uses the term "claim," the code defines "debt" simply as "liability on a claim." § 101(12). The terms "debt" and "claim" are "flip sides to the same coin." *In re Rifkin,* 124 B.R. 626, 628 (Bankr.E.D.N.Y. 1991); *see Johnson v. Home State Bank,* 501 U.S. 78, 84–85 n. 5, 111 S.Ct. 2150, 2154 n. 5, 115 L.Ed.2d 66 (1991); S.Rep. No. 989, 95th Cong., 2d Sess. 23 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5787, 5809 ("The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor."). Reading § 109(e) in a manner consistent with § 506(a) leads to the conclusion that a debt, which is supported by a security interest, is nevertheless an unsecured debt to the extent that there is no value in the security to support it.

Further, basic bankruptcy principles do not preclude reading § 109(e) as using "secured debts" and "unsecured debts" in the code rather than in the literal sense. *Cf. Dewsnup v. Timm, supra,* —— U.S. at —— – ——, 112 S.Ct. at 778–79. The § 109(e) dollar limitations were enacted by the Bankruptcy Reform Act, and demonstrate a congressional intent to limit chapter 13 relief to the individual or sole proprietor with no more than a designated amount of unsecured debt. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 319–20 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5963, 6276–77. That intent is furthered by reading "unsecured debts" in the code sense.[4]

The weight of authority adopts the foregoing analysis, holding that the unsecured portion of undersecured debts must be included in the $100,000.00 limitation of § 109(e). *See, e.g., Brown & Co. Securities Corp. v. Balbus (In re Balbus),* 933 F.2d 246, 247 (4th Cir. 1991); *Miller v. United States,* 907 F.2d 80, 82 (8th Cir.1990); *Matter of Day,* 747 F.2d 405, 406 (7th Cir.1984); *In re Strober,* 136 B.R. 614, 625 (Bankr.E.D.N.Y.1992); *In re Mason,* 133 B.R. 877, 878–79 (Bankr. N.D.Ohio 1991); *In re Magras,* 129 B.R. 429, 432 (Bankr.D.Virgin Islands 1991); *In re Rifkin, supra,* 124 B.R. at 628; *In re Jerome,* 112 B.R. 563, 566 (Bankr.S.D.N.Y.1990); *In re Bos,* 108 B.R. 740, 741–42 (Bankr.D.Mont. 1989); *United States v. Edmonston,* 99 B.R. 995, 999 (E.D.Cal.1989). Indeed, one court has held that "[i]t is now settled law that pursuant to 11 U.S.C. § 506(a), the secured debt above the value of the security should be included as an unsecured debt in calculation of the $100,000.00 unsecured debt limitation under 11 U.S.C. § 109(e)." *In re Jerome, supra,* 112 B.R. at 566. Several courts have expressed the concern that a rule under which partially secured debts were treated as secured debts for § 109(e) purposes could open the door to manipulation of chapter 13 eligibility requirements. *See, e.g., Miller v. United States, supra,* 907 F.2d at 82 ("If the courts cannot look beyond the mere existence of a piece of paper creating a security interest a debtor could easily circumvent the debt limitations of § 109(e)."); *Matter of Day, supra,* 747 F.2d at 407; *United States v. Edmonston, supra,* 99 B.R. at 999. Another has noted that such a rule would result in a debt being treated as fully secured under § 109(e) merely because a judgment lien had been recorded, even if there was no equity in the debtor's property to which the lien could attach. *In re White,* 148 B.R. 283, 287

---

**3.** *Nobelman* also held that the terminology "claim secured by a lien" refers to a secured claim in the literal sense. *Id.* at 714. It is significant that that terminology was not employed in § 109(e), e.g., "only an individual that owes debts, not secured by a lien or security interest, of less than $100,000 . . . ."

**4.** I note that the Senate has passed an amendment to § 109(e) which would increase the chapter 13 eligibility limitation to $1,000,000.00, in the aggregate, of secured and unsecured debts. S. 540, 103 Cong., 1st Sess. § 109(a) (1993), 139 Cong.Rec. S2610–02, 2613.

(Bankr.N.D.Ohio 1992).[5] I share those concerns and find that they provide policy support for the reading I give § 109(e).

The conclusion that debts determined in the code sense to be unsecured must be included in the eligibility standard of § 109(e) is not altered by the authority relied upon by the debtor. The debtor relies largely on two cases in support of her position. The first, *Comprehensive Accounting Corp. v. Pearson (Matter of Pearson)*, 773 F.2d 751 (6th Cir.1985), compared chapter 13 eligibility determination to the test for federal subject matter jurisdiction in diversity cases, under which the "amount in controversy is determined as of the time the action is commenced" and "[s]ubsequent events do not divest the court of jurisdiction," *id.* at 757. *Pearson* held that a court should rely on the debtor's schedules in making a § 109(e) determination, provided those schedules were made in good faith, *id.* at 756. Because the schedules showed that the claims at issue were in dispute and in an unspecified amount, the court found that the subsequent determination of the claims did not render the debtor ineligible. Even if I were to follow *Pearson* and look only at the schedules, I would find that the debtor was ineligible because her schedules disclose that her undisputed, liquidated and noncontingent unsecured debts exceeded $100,000.00 on the Filing Date. *See Miller v. United States, supra,* 907 F.2d at 82; *In re Rifkin, supra,* 124 B.R. at 629; *First Bank, Nat'l Ass'n v. Martin (Matter of Martin)*, 78 B.R. 928, 930 (Bankr.S.D.Iowa 1987); *Matter of Koehler*, 62 B.R. 70, 72 (Bankr.D.Neb.1986) ("[t]he petition, schedules and plan show on their face, without a hearing to determine secured status, that part of the Bank's claim is secured and part is unsecured.").[6]

The second case, *In re Morton*, 43 B.R. 215 (Bankr.E.D.N.Y.1984), held that § 506(a) does not apply to the § 109(e) determination. *Morton* agreed that "debt" and "claim" "represent the same liability." *Id.* at 220. However, the court noted that § 506(a) deals with allowed claims, and that claims may not be allowed until long after filing. "It would be anamolous (sic) to believe that Congress intended that a determination of whether a debtor was eligible for chapter 13 would have to be delayed until the case has substantially progressed." *Id.* In *Morton*, the creditor's § 109(e) challenge was made some one and one-half years after the petition date, and *after* confirmation of the debtor's plan. *Id.*[7]

While it is true that § 506(a) deals with allowed claims, it is also true that a claim is allowed unless a party in interest objects. *See* § 502(a). Where a debtor's schedules reveal that claims listed as secured (in the literal sense) are in fact unsecured or undersecured (in the code sense) and that those claims are fixed and liquidated, any delay in the determination of those admitted facts should not be used to require that eligibility be determined by a literal reading of those schedules. The bankruptcy court has ample power to prevent a party in interest from asserting an unduly delayed challenge to a debtor's eligibility. *See* § 105(a). I note that there is no allegation of undue delay here. *See Hammers v. Internal Revenue Serv. (Matter of Hammers)*, 988 F.2d 32 (5th Cir.1993) (upholding bankruptcy court's *sua sponte* dismissal of chapter 13 case following chapter 13 trustee's objection to confirmation of plan due to debtor's ineligibility).

A § 109(e) challenge must of necessity be made post-petition, but where as here it is based on facts disclosed by the debtor's schedules, it cannot be said that post-petition events resulted in the loss of eligibility. The debtor never disputed the amount or validity of any of the 506(a) Unsecured Claims, and in fact filed several of the proofs of claim in

---

5. It is noted that most of the 506(a) Unsecured Claims were nominally secured by judgment, not consensual, liens and that it appears likely that there was never any value in the residence to which those liens could attach.

6. *Pearson* has been distinguished on the same grounds by a court which is bound by its hold-ing. *See In re McClaskie*, 92 B.R. 285, 286 (Bankr.S.D.Ohio 1988).

7. Because the challenge to eligibility was brought post-confirmation, it was arguably barred under the doctrine of res judicata. *See, United States v. Edmonston, supra,* 99 B.R. at 998.

amounts corresponding to her schedules. Allowance of those claims was never an issue, nor was the extent to which the claims were unsecured (in the code sense). The debtor knew or should have known from the inception of this case that if her valuation of her residence was correct, she was ineligible for relief under § 109(e). *See In re Rifkin, supra,* 124 B.R. at 629 ("It is unreasonable for the Court to turn a blind eye to uncontested facts contained in the schedules."); *In re McClaskie,* 92 B.R. 285, 287 (Bankr.S.D.Ohio 1988). In fact, the debtor's estimation of the value of her residence in her schedules was nearly twice the value she asserted in her 506(a) Motion; yet even assuming that the higher value was claimed in good faith, the debtor is still ineligible.[8]

The debtor invites me to consider an issue which is arguably more difficult. If a claim is partially but not fully secured by a residence, so that § 1322(b)(2) protects it from being modified, should the portion of the claim that could have been treated as unsecured but for § 1322(b)(2) be treated as unsecured for § 109(e) purposes? That issue is not properly before me because under the facts in this case, § 1322(b)(2) did not preclude the debtor from applying § 506(a).[9] It is patently unfair for the debtor to be permitted to treat a claim as unsecured for purposes of distribution, which in this case would have resulted in no distribution whatsoever, and yet treat the same claim as fully secured for the purpose of evading the unsecured debt limitation of § 109(e).

## ORDER

The trustee's objection to confirmation of the debtor's Second Amended Chapter 13 Plan is SUSTAINED, and IT IS SO ORDERED.

---

**8.** The debtor's reliance on *In re Dally,* 110 B.R. 630 (Bankr.D.Conn.1990) is completely misplaced. In *Dally,* I held that where the debtors exercised a right of rescission post-petition, the secured claims were not unliquidated on the petition date and could be counted in the § 109(e) calculus. *Dally* is distinguishable because here (i) the debtor's schedules disclosed her ineligibility on the petition date and (ii) the 506(a) Order, although entered post-petition, established the facts as they existed on the petition date. Further, while the debtor cites to *In re Edmonston,* 99 B.R. 993 (Bankr.E.D.Cal.1988), she neglects to point out that case was affirmed on *res judicata* grounds because the § 109(e) challenge was made post-confirmation,

the district court expressly disapproved of the bankruptcy court's holding that "secured debts" included all claims that were secured in the literal sense. *United States v. Edmonston, supra,* 99 B.R. at 999 ("The court does not agree with the Bankruptcy Court that the *Morton* test is the proper one for Chapter 13 eligibility because section 506 clearly indicates that the unsecured portion of a secured debt should be treated as an unsecured claim.")

**9.** It is noted that the debtor's schedules disclose her to be ineligible even if all partially secured claims are treated as fully secured for § 109(e) purposes.