In re Artis Darrell WHITE, Sr.
and Janice White, Debtors.

In re Joseph P. O'BRIEN, Debtor.

Bankruptcy Nos. 91–16108, 92–11266.

United States Bankruptcy Court,
N.D. Ohio.

Dec. 9, 1992.

Waldemar J. Wojcik, Cleveland, OH, for Artis Darrell White, Sr. and Janice White.

Arthur I. Harris, Asst. U.S. Atty., Cleveland, OH, for the I.R.S.

Thomas C. Pavlik, Christine A. Murphy, Rubenstein, Novak, Einbund, Pavlik & Celebrezze, Cleveland, OH, for Joseph P. O'Brien.

Joan Allyn Kodish, Freeman & Kodish, Cleveland, OH, for O'Brien Chevrolet.

### MEMORANDUM OF DECISION

DAVID F. SNOW, Bankruptcy Judge.

In both of these chapter 13 cases creditors have requested the Court to dismiss the case on the ground that the debtors are ineligible for chapter 13 relief because their unsecured debts exceed $100,000. The parties have briefed their positions and have agreed that there are no factual issues to be decided. The cases involve quite different fact situations, but the issue in each is whether the debtor is eligible for chapter 13 relief under section 109(e) of the Bankruptcy Code.

### The White Case

The Whites' case was filed as a chapter 7 liquidation on November 7, 1991. The case was converted to chapter 13 on April 27, 1992. On June 11, 1992, the Internal Revenue Service ("IRS") objected to the Whites' proposed plan and filed a motion to dismiss the case because it contends that the Whites' unsecured debt exceeded the jurisdictional limit.

The summary of schedules filed with the chapter 7 petition shows total assets of $39,070 and total liabilities of $151,777 resulting, on its face, in an excess of liabilities over assets of $112,707 or $12,707 over the $100,000 limit on unsecured debt permitted by section 109(e). The figures on the summary do not differentiate between disputed and undisputed claims.

The IRS argues that where the debtors' schedules reveal unsecured debts of $100,000 or more, the Court is constrained to find the debtors ineligible for chapter 13. Moreover, the IRS has filed a claim for nearly $51,000 rather than the approximate $18,000 shown in the Whites' schedules. This claim was scheduled as secured but would be wholly or largely unsecured depending on the value of the Whites' interest in their home, which is 'their principal asset. The IRS's secured claim was scheduled as disputed as were about $12,000 of other scheduled secured claims. Recently the Whites objected to the IRS claim and assert that the figure shown in the schedules is accurate. If the IRS's claim is sustained in the amount filed, this would increase the Whites' unsecured debt by $33,000.

This computation is, however, complicated by two other considerations. First, the Whites apparently own only a one-half undivided interest in their home. They listed their one-half interest at $32,500, based on a value of $65,000 for the home. If the latter figure had been used in the schedules, the Whites' unsecured debt would have been reduced some $32,500 to a total of about $80,000. The Whites argue that only one-half of the mortgage debt should be included in the 109(e) computation, as reflected in their Schedule D. They argue, moreover, that based on a recent appraisal the house is in fact worth $71,500, not $65,000.

### The O'Brien Case

The O'Brien case was filed on March 4, 1992 under chapter 13 of the Bankruptcy Code. In this case too Mr. O'Brien's principal asset is his home. The summary of schedules in this case shows total assets of $199,000 and total liabilities of $370,916, $337,000 of which are listed as secured claims. Therefore, the summary on its face indicates that total unsecured and undersecured debt equals about $172,000. From the schedules and from subsequent pleadings it appears that Mr. O'Brien and his wife (who is not a debtor) are obligated on a first mortgage note for about $118,000 and a second mortgage note for about $40,-000. In 1990 Joe O'Brien Chevrolet, Inc. obtained a judgment against O'Brien for $150,000 in state court, which it filed as a lien on his interest in the home. It appears that this lien may have priority over the second mortgage, at least as to Mr. O'Brien's interest in the home, since it was apparently recorded as a judgment lien prior to the second mortgage.

Mr. O'Brien filed with his petition a motion to value the secured claim of the second mortgage at $0 and to value the secured claim of O'Brien Chevrolet at $16,000, subsequently amended to $21,750. On April 8, 1992, O'Brien Chevrolet filed an objection to confirmation of the plan and an objection to the debtor's motion to value. On June 2, 1992, the Court held a hearing on the confirmation and the motion to value. Confirmation and the motion to value as it related to O'Brien Chevrolet were adjourned. The debtor advised that the motion to value in respect of the second mortgage had been settled. On June 26, 1992, O'Brien Chevrolet filed a supplemental objection to confirmation in which it first raised the question of Mr. O'Brien's chapter 13 eligibility under section 109(e).

In the motion to value collateral filed March 4 with the petition Mr. O'Brien asserted that the home was worth $160,000. In a stipulated order filed July 2, 1992, Mr. O'Brien withdrew his motion to value the collateral of the second mortgagee and stipulated that the second mortgagee's $41,202.62 claim should be allowed in full as a secured claim without regard, apparently, to the possible priority of the O'Brien Chevrolet claim. This leaves uncertain the amount by which O'Brien Chevrolet's claim would be unsecured, but would not of itself reduce O'Brien's unsecured debt below $100,000. However, O'Brien Chevrolet's April 8 objection to Mr. O'Brien's motion to value the home asserted that the $160,000 value was too low and that "[t]he actual secured value of the Objecting Creditor's claim will certainly reach $80,000.00 to $100,000.00 once a reasonable appraisal might be had." This raised the possibility that O'Brien's undersecured debt might be

less than $100,000 after the home had been valued.

O'Brien Chevrolet's statement of the value of its interest in the home assumes that its judgment lien has priority over the second mortgage, at least as to Mr. O'Brien's interest. It is unclear whether it also presupposes that Mrs. O'Brien's interest in the home would be subject to its judgment lien as well. In any event, if O'Brien Chevrolet's claim were found to be secured to the extent of $100,000, this would reduce Mr. O'Brien's unsecured debt to about $90,000, even if the second mortgage were determined to be wholly unsecured notwithstanding the stipulated order entered finding that the second mortgage is fully secured.

### Analysis

Section 109(e) of the Bankruptcy Code provides in relevant part:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 or an individual with regular income and such individual's spouse ... that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,-000 may be a debtor under chapter 13 of this title.

The seminal case interpreting section 109(e) is *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751 (6th Cir.1985). In that case the debtors filed their petition and schedules in chapter 13 on March 18, 1983, listing Comprehensive as having both a secured and unsecured claim, but showing the amount of each claim as unknown and in dispute. On May 23, 1983, Comprehensive's status was clarified when the debtors amended their chapter 13 statement to show Comprehensive as an unsecured creditor with a claim of $127,-450.12. At the confirmation hearing two days later Comprehensive objected to confirmation because the debtor's unsecured

debts exceeded $100,000. Comprehensive's objection was overruled by the bankruptcy court which held that at the time of filing the debtor's noncontingent, liquidated unsecured debts were less than $100,000. Its holding was affirmed by the district court and by the Sixth Circuit, notwithstanding the fact that prior to filing an arbitrator had awarded Comprehensive $127,450.12.

The Sixth Circuit justified excluding this claim from the 109(e) eligibility computation because at the time of filing the claim was disputed by the debtors and because there was then an unresolved question as to the extent of security for the claim. In view of this, the court suggested that Comprehensive's claim might be viewed as unliquidated at the time the debtors' petition was filed. The fact that the uncertainties, such as they were, were resolved within less than two and one-half months after the filing was not controlling. The court justified its approach to chapter 13 eligibility on Congress' intent to provide consumers and small businesses incentives to choose chapter 13 rather than liquidation and on the need to determine eligibility with a minimum of litigation.

[I]t is necessary that the procedures for determining initial jurisdiction cannot be allowed to dominate the proceedings themselves nor to delay them unduly. As important as this may be in the ordinary diversity litigation in a district court, it is even more important with respect to Chapter 13 proceedings for time is of the essence. The resources of the debtor are almost by definition limited and the means of determining eligibility must be efficient and inexpensive. To allow an extensive inquiry in each case would do much toward defeating the very object of the statute.

*Id.* at 757. Based on these considerations the court went on to state: "Chapter 13 eligibility should normally be determined by the debtor's schedules checking only to see if the schedules were made in good faith." The creditors in both the White and O'Brien cases argue that the debtors flunked this test because from their sched-

ules it appears that their unsecured debts were not less than $100,000.

In White, however, it appears that the debtors meet this test if the Court is permitted to treat the claims of the first and second mortgagees as secured, at least to the extent of $65,000. This would reduce the Whites' unsecured debt, as shown on their summary of schedules, to about $80,-000. Nothing in *Pearson* would preclude adjusting the Whites' mortgage debt to correspond with the full value of the Whites' home. Schedule D, which lists secured debt, shows the full value of the home as well as the entire debt secured by the home despite the fact that the debtors apparently own only half the property. The extent of the creditor's security cannot be gleaned from the summary of schedules upon which the IRS relies.

The IRS does not argue that the mortgagees' secured claims cannot be increased to the full value of the house under section 506(a) of the Code. That section provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

█ No case was cited which deals with the classification of a claim under section 109(e) which is secured in part by property belonging to a third party. Certainly an obligation which is secured by property of a third party would normally be deemed a secured debt of the obligor, not an unsecured debt. If the obligor paid the debt, he would be subrogated to the lender's security, unless he had contracted away this right or waived recourse against the security. There is nothing in this case to suggest that the Whites have the burden of the full mortgage debt without the protection of the full value of the home. It would under these circumstances be improper to interpret section 506(a) to require that one-half of the mortgage debt be characterized as unsecured debt for purposes of

section 109(e). *Cf. Dewsnup v. Timm (In re Dewsnup),* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

This is certainly a case where chapter 13 jurisdiction appears appropriate under *Pearson* unless clearly precluded by the section 109(e) debt limitations. The debtors' monthly income is $1,733; their monthly expenses are $1,442. They lack the money to pay the costs associated with a chapter 11 case. This is precisely the sort of case for which chapter 13 appears to have been structured.

Under the test in *Pearson* we need not determine whether the IRS claim is $50,-000, as it asserts, or $18,000, as the Whites contend. The IRS does not allege that the $18,000 figure in the schedules was inserted in bad faith. Since this case was originally filed in chapter 7, the Whites would have had no reason to understate the IRS claim to confer chapter 13 jurisdiction. Based on the Court's analysis we need not consider the Whites' claim that their house is worth $75,000 nor consider the effect of their scheduling some of their claims as disputed.

█ The O'Brien case is more difficult. There is nothing in his schedules which indicates that the unsecured debt is less than $100,000, if the undersecured portion of the O'Brien Chevrolet judgment is counted as unsecured debt. Mr. O'Brien argues that this Court should, however, follow *In re Morton,* 43 B.R. 215 (Bankr. E.D.N.Y.1984), which refused to bifurcate undersecured claims for purposes of section 109(e). But *Morton* appears to be very much in the minority; most cases have gone the other way. *Brown & Co. Securities Corp. v. Balbus (In re Balbus),* 933 F.2d 246 (4th Cir.1991); *Miller v. United States,* 907 F.2d 80 (8th Cir.1990); *In re Day,* 747 F.2d 405 (7th Cir.1984); *In re Mason,* 133 B.R. 877 (Bankr.N.D. Ohio 1991); *In re Rifkin,* 124 B.R. 626 (Bankr. E.D.N.Y.1991); *United States v. Edmonston,* 99 B.R. 995 (Bankr.E.D.Cal.1989); *In re McClaskie,* 92 B.R. 285 (Bankr.S.D. Ohio 1988). *Pearson* adverts to this conflict between *Morton* and cases which count undersecured debt but does not resolve it.

*Morton* dealt with a mortgage. Mortgagees normally loan less than the value of their security. In that circumstance there is some justification, consistent with *Pearson,* for treating the entire mortgage as secured debt for purposes of section 109(e). In this case, however, the O'Brien Chevrolet claim bears no relationship to the value of the O'Brien home. It is a secured claim solely because the judgment was recorded in the appropriate lien records; otherwise it would have been an unsecured claim. A *per se* rule that such liens must be characterized as fully secured for purposes of section 109(e) would make eligibility for chapter 13 turn on whether a judgment had been recorded as a lien and would be arbitrary. So far as appears, no Sixth Circuit case has interpreted *Pearson* to justify such a rule. *See Mason* and *McClaskie, supra.* Moreover, such a rule does not appear necessary to conform to *Pearson's* prescription that eligibility for chapter 13 be determined expeditiously and inexpensively consistent with Congress' intent that chapter 13 be available to consumers and small proprietors.

The facts in *O'Brien* are, however, distinguishable from those in cases where the court has denied eligibility because of bifurcating secured claims. In most of those cases it was clear, or the court found it should have been clear, that the debtors' unsecured debts were at least $100,000 at the time the petition was filed. In *Balbus,* the parties had agreed on the fair market value of the real estate securing the claims at issue. In *Day,* it appeared from the parties' pleadings that the security for the allegedly secured claim was worthless. In *McClaskie,* the debtor attempted to amend its schedules to reclassify an IRS claim as secured rather than unsecured. The court found that even were that amendment permitted it was "clear" that the reclassification would not enable the debtor to comply with the $100,000 unsecured debt limit. In *Mason,* the parties had agreed that the undersecured portion of the FMHA's secured claim was $166,000, $66,000 over section 109(e)'s $100,000 limit.

In this case, however, Mr. O'Brien's March 4, 1992, motion to value and O'Brien Chevrolet's April 8, 1992, objection made clear that the value of the home was at issue and that O'Brien Chevrolet's secured claim might be large enough to prevent Mr. O'Brien from running afoul of section 109(e)'s $100,000 limit. Although O'Brien Chevrolet's brief filed September 3, 1992 suggests that the parties may have agreed upon a $170,000 value for the home, elsewhere it suggests that this value may still be at issue and that the debtor could cure his eligibility problem by according O'Brien Chevrolet a sufficiently large secured claim.

To finally resolve the value of O'Brien Chevrolet's secured claim, the Court would need to value the O'Brien home and perhaps determine whether the O'Brien Chevrolet lien affects Mrs. O'Brien's interest in the home and the relative priority of that lien *vis-a-vis* the second mortgage. But tying section 109(e) eligibility to resolution of the value of the home and such other matters would clearly violate *Pearson's* admonition that chapter 13 eligibility be decided summarily.

But even if the parties have now agreed on the value of the house, it appears that as of the filing date Mr. O'Brien could have asserted in good faith that his unsecured debt was less than $100,000. *Pearson* makes clear that a post filing determination showing unsecured claims of $100,000 or more will not defeat eligibility if on the filing date the debtor could in good faith assert debts within section 109(e)'s eligibility limits.

If the Court looks solely at Mr. O'Brien's schedules, it must find him ineligible. But this is disturbing since the movant's own pleadings, filed before the eligibility question was raised, show the possibility that the house may be valued at a level which causes his unsecured debts to be less than $100,000. *Pearson* suggests by analogy to federal diversity jurisdiction that the debtor be found eligible unless it appears as a "legal certainty" that his debts exceed the section 109(e) limits. On this test Mr. O'Brien is clearly eligible, provided only that the Court is permitted to factor in the O'Brien Chevrolet objection to Mr.

288

O'Brien's motion to value filed with his petition. Doing so would not delay or make more costly the Court's eligibility determination.

In one relevant respect, moreover, the analogy to federal diversity jurisdiction is inapt or at least imprecise. The diversity plaintiff must allege damages of the requisite amount to confer jurisdiction on the district court. The chapter 13 debtor need. not allege compliance with the debt limits in section 109(e). He is, however, under other constraints.

He is required to file schedules on terms prescribed by the Administrative Office of the United States Courts providing detailed information on his financial condition, his debts and his assets. This information must often be assembled hurriedly in the face of a pending foreclosure sale of his home and in a context where the lawyer guiding him is paid in this jurisdiction on average total fees of about $700 to see the case through to confirmation and often beyond. In this situation the debtor's statements of value are typically guesses made without appraisals. Real estate valuations can vary widely even with appraisals.

Moreover, the debtor is often advised to select a value at the low end of the valuation range in order to reduce the fixed payments required to be paid through, or maintained under, the chapter 13 plan. Therefore the values fixed by the debtor in the schedules may be only a target. There is little reason to bind the debtor to the value of his home as set forth in his schedules for purposes of 109(e) eligibility where, as here, the movant's pleadings confirm that the debtor could in good faith have claimed section 109(e) eligibility under the standards suggested in *Pearson*. This factor alone makes this other than the "normal" case for which *Pearson* directed the bankruptcy court to look only at the debtor's schedules. Where the movant attacks the debtor's eligibility under section 109(e) only after filing pleadings which establish the debtor's eligibility for chapter 13 on the petition date, the 109(e) attack comes too late.

This is also a case where there is probably no chapter 11 alternative. The debtor's principal asset is his home. He is a salesman and nets about $60,000 a year. Under the unusual circumstances of this case the Court finds that Mr. O'Brien is eligible for chapter 13.