**In re Michael L. BELKNAP, Debtor.**

**Bankruptcy No. 94–12007 B.**

United States Bankruptcy Court,
W.D. New York.

Nov. 10, 1994.

Burgett & Robbins (Dale Robbins, of counsel), Jamestown, NY.

Saperston & Day, P.C. (Paul A. Peters, Jeffrey E. Reed, of counsel), Buffalo, NY.

CARL L. BUCKI, Bankruptcy Judge.

In this Chapter 13 proceeding, Mary Belknap has objected to the consideration of a plan filed on behalf of her former husband, Michael E. Belknap. At issue is whether the debtor can satisfy the debt limits established under the applicable provisions of section 109(e) of the Bankruptcy Code. Specifically, Mary Belknap contends that certain alimony obligations are to be credited against the limits for unsecured indebtedness, even though secured by a mortgage covering real property that is owned by the debtor's corporation.

Michael E. Belknap filed his petition for relief under Chapter 13 on July 11, 1994, that being prior to the effective date of the Bankruptcy Reform Act of 1994.[1] Thus, under the applicable provisions of section 109(e), Michael E. Belknap is eligible for Chapter 13 relief only if, on the date of filing, he owed "noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000." Apart from the treatment of a portion of the debtor's alimony obligation to Mary Belknap, it appears that the noncontingent, liquidated, unsecured debts totalled $59,109.

The claim of Mary Belknap derives from a Marital Settlement Agreement dated March 17, 1991. Pursuant to this agreement, the debtor promised to pay alimony to Mary Belknap in the form of lump sums totalling $90,000. Of this amount, the sum of $60,000 was secured by a mortgage covering real property that is commonly known as 3075 Fluvanna Avenue in the City of Jamestown, New York. The owner of this real property is Mike's Carriage House, Inc., a corporation whose stock is wholly owned by Michael E. Belknap, the debtor herein. Mike's Carriage House, Inc., is itself a debtor under Chapter 11 of the Bankruptcy Code. The corporation's asset schedules indicate, however, that the real property has sufficient value to collateralize fully the $60,000 indebtedness.

The parties agree that the debtor remains obligated to pay $90,000 in alimony and that at least $30,000 of this amount constitutes a noncontingent, liquidated, unsecured debt.

---

1. Pub.L. No. 103–394, 108 Stat. 4106. For cases filed after October 22, 1994, the Chapter 13 limit for noncontingent, liquidated unsecured debts is raised to $250,000.

The present controversy relates to the collateralized portion of the alimony obligation, in the amount of $60,000. Mary Belknap contends that this amount is not secured by assets of the debtor and that insofar as the debtor is concerned, it must be treated as an unsecured obligation. She further argues that the underlying claim is fully liquidated and is not contingent upon the determination of a foreclosure deficiency. To the extent that this $60,000 were to constitute a noncontingent, liquidated, unsecured debt, Michael Belknap would exceed the $100,000 limit for this type of indebtedness in Chapter 13.[2]

The limit of $100,000 in Chapter 13 cases applies only to "noncontingent, liquidated, unsecured debts." With respect to the alimony claim, Michael Belknap is a primary obligor. Unlike a guarantor, his liability is fixed, and is not contingent upon the calculation of a mortgage deficiency. That the creditor may also seek recourse from assets of a third party will in no way diminish the debtor's liability or the certainty of the amount that is presently due and owing.[3] The liability to Mary Belknap is, therefore, noncontingent and liquidated. Her objection falls short, however, in that the debt is secured.

■ Mary Belknap correctly notes that under section 506(a) of the Bankruptcy Code, a secured claim is an allowed claim that is "secured by a lien on property in which the estate has an interest, or that is subject to setoff. . . ." In the present instance, her lien covers property in which the estate of Michael L. Belknap has no direct ownership interest. Ms. Belknap errs, however, in assuming that a secured claim under section 506(a) is identical to a secured debt under section 109(e). The Bankruptcy Code contains no definition of secured debt. Had Congress wished to use ownership of collateral as a standard for Chapter 13 eligibility, it could have drafted section 109(e) to reference "secured claim" as a defined term.

Rather, it chose different language, to which this Court must assign its natural and obvious meaning. A secured debt is simply a debt which is secured by property. The court finds no basis to infer a requirement that that property belong to the debtor.

■ This Court agrees with the analysis which Judge Parente set forth in his decision in *In re Gorman*, 58 B.R. 372 (Bkrtcy. E.D.N.Y.1986). "Bankruptcy Courts have consistently interpreted the phrase 'secured debts,' as appearing in section 109(e), to signify a debt to which collateral has been assigned as security." 58 B.R. at 374. Under New York law, a mortgage may secure the debt of a third party. 77 N.Y.Jur.2d, Mortgages and Deeds of Trust § 63. Accordingly, for purposes of determining eligibility for Chapter 13, a secured debt would include obligations that are secured only by assets other than those of the debtor's estate.

For the reasons stated above, the collateralized portions of Mary Belknap's alimony claim are to be treated as secured, rather than unsecured debt for purposes of section 109(e). Having satisfied the monetary limits set forth in this section, the debtor qualifies for relief under Chapter 13. At this time, however, the Court makes none of the other findings that are requisite for confirmation. The Court directs the trustee to set this matter for further hearing, at which time creditors will have opportunity to present such further objections as may be relevant.

So ordered.

---

**2.** The limit on secured indebtedness is not at issue because the $60,000 alimony claim will not cause the total of secured indebtedness to exceed $350,000.

**3.** In contrast, a guarantor has only secondary liability. Such liability is generally contingent upon the inability to recover or to collect from the primary obligor. The contingent nature of a guarantee is removed, however, when the true state of affairs indicates that the guarantor will ultimately be responsible for the debt. *See Matter of Prince*, 5 B.R. 432 (Bkrtcy.W.D.N.Y.1980).