**In re Russell C. BROWN and Marjorie S. Brown, Debtors.**

No. 00–00484.

United States Bankruptcy Court, D. Idaho.

July 12, 2000.

Howard Foley, Foley & Freeman, Meridian, Idaho, for Debtors.

Mark B. Perry and Trevor L. Hart, Howard, Ellsworth, Ipsen & Perry, Boise, Idaho, for Creditor First Security Bank, N.A.

Bernie Rakozy, Boise, Idaho, Chapter 13 Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

### Background

Before the Court for disposition is Creditor First Security Bank's ("FSB") Motion to Dismiss the Chapter 13 case filed by Debtors Russell and Marjorie Brown. The Court conducted a hearing on the motion on May 23, 2000, after which the issues were taken under advisement. The parties have submitted written briefs. After due consideration of the record and arguments of the parties, the following constitutes the Court's findings, conclusions and decision. Fed. R. Bankr.Proc. 7052.

### Facts

Debtors are the sole owners of the stock of Power Tool & Machinery Company, Inc. ("PTMC") and PTM Properties, LLC ("PTMP"). PTMC is operated by Debtors as an "S Corporation" for tax purposes. PTMP owns the land and building upon which PTMC operates its business. Both PTMC and PTMP are currently debtors in proceedings pending under Chapter 11 of the Bankruptcy Code in this District.

PTMC and PTMP borrowed from FSB. The amount due on those obligations is approximately $275,000.[1] Debtors personally guaranteed these debts and FSB has

---

1. FSB filed two separate proofs of claim in PTMC's Chapter 11 case (Case No. 99–03055), one for $9,549.71 (Claim No. 20), the other for $257,111.43 (Claim No. 30). In the PTMP case, FSB filed a proof of claim in the amount of $275,255.93.

filed a proof of claim in this case in the amount of $275,255.93.[2] The FSB loans are secured by the inventory, equipment, and accounts receivable of PTMC, which Debtors assert have an aggregate value of approximately $377,498.[3]

## Discussion

FSB argues Debtors are not eligible for relief under Chapter 13 pursuant to Section 109(e) of the Bankruptcy Code. Under that statute, a debtor is not eligible for relief under Chapter 13 if on the date of the filing of the petition the debtor has in excess of $269,250 of unsecured debt, or in excess of $807,750 of secured debt. 11 U.S.C. § 109(e). The issue raised in this case involves the characterization of FSB's claims against Debtors in this Chapter 13 case as secured or unsecured. If FSB's claims constitute "unsecured debt" in Debtors' Chapter 13 case, they are not eligible for relief and the case should be dismissed. If FSB's claims are secured debts for eligibility purposes, the debt limit is not exceeded.

The term "secured debt" is not defined in the Bankruptcy Code. However, "debt" means liability on a claim. 11 U.S.C. § 101(12). The Supreme Court has instructed that the terms "claim" and "debt," as used throughout the Code, should be considered coextensive. *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 557–58, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (since Section 101(11) of the Bankruptcy Code defines "debt" to mean "liability on a claim," this definition reveals Congress' intent that definitions of debt and claim be coextensive); *Quintana v. Commissioner of Internal Revenue Service (In re Quintana)*, 915 F.2d 513, 517 (9th Cir.1990).

A particular meaning is ascribed to the term "secured claim" for bankruptcy purposes in Section 506(a) which provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest .... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ...." 11 U.S.C. § 506(a). In other words, the term secured claim, and thus secured debt, was intended by Congress to refer to a claim of a creditor secured by a lien on property in which the debtor's bankruptcy estate owns an interest, and is limited in amount to the extent of the value of the creditor's interest in the bankruptcy estate's interest.

Under Section 541(a), the bankruptcy estate includes all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1). The nature and extent of a debtor's interest in property is determined under applicable state law. *State of California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.)*, 792 F.2d 1400, 1402 (9th Cir.1986); *Elsaesser v. Trefz (In re Taylor)*, 95 I.B.C.R. 213, 215, 1995 WL 577361 (Bankr.D.Idaho). Here, Debtors contend they own an interest in the assets of PTMC because they are the sole shareholders of that corporation. Because they own an interest in the assets of PTMC, which assets secure the loans of FSB, the argument goes, FSB's claims in Debtors' individual Chapter 13 case are properly characterized as "secured debts." While the argument seems logical enough, it suffers from a fatal flaw.

Under Idaho law, a corporation is a distinct and separate legal entity. *Jordan v. Hunter*, 124 Idaho 899, 865 P.2d 990,

---

2. On May 23, 2000. Debtors filed an objection to FSB's proof of claim (Docket No. 28). In the objection, Debtors contend, as they do here, that FSB's claim is a secured, and not an unsecured, claim. They do not challenge the amount claimed to be due from Debtors, and so, in this regard, the proof of claim is prima facie evidence of the validity and

amount of FSB's claims. *See* Fed. R. Bankr. Proc. 3001(f).

3. Debtors base the valuation of collateral on the bankruptcy schedules of PTMC. *See* Debtors' Response to First Security's Memorandum at p. 3 (Docket No. 24).

996 n. 5 (1993); *Alpine Packing Company v. H.H. Keim Company, Limited,* 121 Idaho 762, 828 P.2d 325, 326 (1991). Ownership of stock in a corporation does not equate to ownership of corporate assets. *Pincock v. Pocatello Gold and Copper Mining Company, Inc.,* 100 Idaho 325, 597 P.2d 211, 214 (1979). PTMC owns the assets securing FSB's claims; Debtors merely own the shares of stock of the company. *See* 2 Collier on Bankruptcy, § 101.30[3], pg. 101–96 (15th ed. rev.) ("[W]hile the individual's interest in the partnership or corporation (which could be 100%) would be property of the estate, the assets of the partnership or corporation would not be.")

■ The nature of Debtors' interest in PTMC's assets is not impacted by the tax status of that company. While a corporation making an election under Subchapter S of the Internal Revenue Code is treated differently for purposes of federal taxation,[4] the Court can find no authority to treat such a corporation differently for other purposes.[5]

■ Sole ownership of a corporation's stock is therefore not sufficient, by itself, to establish that the stockholder owns an interest in the corporation's property for Chapter 13 eligibility purposes. While the Court may disregard an otherwise valid corporate structure, or "pierce the corporate veil," in certain limited instances,[6] Debtors have not established the presence

of such extraordinary circumstances in this case. The Idaho courts admonish that "where an entity chooses to incorporate under the laws of this State and to thereby receive the benefits and privileges extended to corporations, it cannot, when convenient, ask the court to ignore its corporate status and extend to it the advantages to which an individual person is commonly entitled." *Kyle v. Beco Corporation,* 109 Idaho 267, 707 P.2d 378, 383 (1985). Simply put, the Court cannot on this record ignore what appears to be a valid corporate entity and find Debtors have an ownership interest in the specific assets of PTMC in order to allow Debtors to classify the FSB debt as "secured" for purposes of Chapter 13 eligibility.

■ Debtors' argument has some support in the case law. Debtors urge this Court to adopt reasoning suggesting an obligation secured by property owned by a third party may be considered a "secured debt" for purposes of Chapter 13 eligibility. *See Branch Banking & Trust Company v. Russell,* 188 B.R. 542, 544 (E.D.N.C. 1995); *In re Belknap,* 174 B.R. 182, 183 (Bankr.W.D.N.Y.1994); *In re White,* 148 B.R. 283, 286 (Bankr.N.D.Ohio 1992). *Belknap* reasons that any debt for which collateral has been pledged is a secured debt. *Belknap,* 174 B.R. at 183. *White* explains:

Certainly an obligation which is secured by property of a third party would nor-

---

4. A corporation making a Subchapter S election, is taxed as a flow through entity, similar to a partnership under Subchapter K of the Internal Revenue Code. 26 U.S.C. §§ 1363(a) and 1366(a). Under such election, there is no tax on the corporate level but instead all tax consequences flow through to the corporate shareholders individually. *Durando v. United States,* 70 F.3d 548, 550 n. 2 (9th Cir.1995). The Court doubts Congress intended Subchapter S of the tax code to alter corporate structure under state law, or to effect rights under the Federal bankruptcy laws. Had Congress intended the result argued by Debtors, it could have made its intent clear by appropriate amendments to additions to the Bankruptcy Code.

5. Unlike a corporation, a partnership is not a separate legal entity, but instead is the sum of each individual owner's interests. *Swope v. Swope,* 112 Idaho 974, 739 P.2d 273, 280 (1987).

6. Two requirements to pierce the corporate veil are "(1) that there be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2), that if the acts are treated as those of the corporation an inequitable result will follow." *Alpine Packing Company v. H.H. Keim Company, Limited,* 121 Idaho 762, 828 P.2d 325, 326 (1991). *See also Hutchison v. Anderson,* 130 Idaho 936, 950 P.2d 1275, 1279–80 (1997).

mally be deemed a secured debt of the obligor, not an unsecured debt. If the obligor paid the debt, he would be subrogated to the lender's security, unless he had contracted away this right or waived recourse against the security.

*White,* 148 B.R. at 286.

The Court, respectfully, is not inclined to adopt the expansive approach taken in interpreting the Code in the cases cited by Debtors. There is clear and sound authority to the contrary from this Court emphasizing that a debtor must have an interest in the specific collateral in order for the debt to be considered secured in the debtor's case. *In re Maxfield,* 159 B.R. 587, 588 (Bankr.D.Idaho 1993). *See also In re Tomlinson,* 116 B.R. 80, 82 (Bankr. E.D.Mich.1990). To the extent this authority is inconsistent with the reasoning in the cases relied upon by Debtors, the Court declines to follow it.

The Court is also confident the result it reaches is consistent with the policies embodied in the Code. Congress, exercising its discretion to make policy, intended eligibility for Chapter 13 relief to be limited to individuals, and then to only those owing less than a fixed amount of secured and unsecured debt. Had the "secured v. unsecured" status of the debt considered in the eligibility analysis been insignificant, Congress could have prescribed eligibility through imposition of an "aggregate debt" limit, a technique which it adopted for Chapter 12 eligibility. *See* 11 U.S.C. §§ 109(f); 101(18) (Chapter 12 relief limited to "family farmers," which include individuals, partnerships and corporations with "aggregate debts" not exceeding $1,500,000). Moreover, Congress did not intend the financial affairs of corporations, even small ones, to be reorganized under Chapter 13. Chapter 11 is the reorganization remedy available to companies, an option which Debtors, on behalf of their corporations, clearly appreciate and have already exercised. Debtors' interpretation of Section 109(e) would serve to defeat these policies. The Court declines to sanction their efforts.

## Conclusion

For the reasons set forth above, the Court concludes the debts owed to FSB under Debtors' guarantees of the corporate debt are properly characterized unsecured debts in Debtors' individual Chapter 13 case for purposes of determining their eligibility for relief under Section 109(e). Because the total due FSB on the guaranteed debt is approximately $275,000, Debtors have unsecured debts in excess of $269,250. Accordingly, Debtors are not eligible for relief under Chapter 13 and FSB's Motion to Dismiss will be granted.

A separate order will be entered.