In re Stephen William
**LOWER, Debtor.**

No. 03–18605–HRT.

United States Bankruptcy Court,
D. Colorado.

June 28, 2004.

Vic Carter, Arvada, CO, Ellen R. Welner, Englewood, CO, David R. Juarez, John A. Meininger, Northglenn, CO, for Debtor.

Leo M. Weiss, Paul G. Quinn, Denver, CO, for U.S. Trustee.

### ORDER REGARDING DEBTOR'S MOTION TO CONVERT FROM CHAPTER 11 TO CHAPTER 13

HOWARD R. TALLMAN, Bankruptcy Judge.

THIS MATTER is before the Court on the Motion of Debtor to Convert from Chapter 11 to Chapter 13 and objections by the United States Trustee ("UST") and Scott Shelton ("Shelton"), who request that the case be reconverted to chapter 7. A hearing on Debtor's motion was held on May 3 and May 4, 2004. The Court, having considered the evidence, supported by witnesses, exhibits and the arguments of counsel, and having reviewed the post-trial briefs submitted by the parties, is now ready to rule.

### CASE BACKGROUND

1. The Debtor filed his petition under chapter 7 on May 6, 2003.
2. Jon Nicholls was appointed as the chapter 7 trustee.
3. The Debtor has an ownership interest in several current or former business entities using the name

"Hardbodies," primarily operating a striptease booking agency and other related activities.

4. On October 12, 2003, the chapter 7 trustee filed a Complaint pursuant to 11 U.S.C. § 727 objecting to the Debtor's discharge.

5. On December 19, 2003, the Trustee filed a Motion to Sell Stock in Hardbodies, Inc. to SASS, Inc., a company apparently owned or controlled by Shelton.

6. The Debtor filed his Motion to Convert to a Chapter 11 Case on December 22, 2003. The Order allowing the conversion as a matter of right was entered on December 23, 2003.

7. Shelton filed a Motion to Convert Case from Chapter 11 to Chapter 7 on January 2, 2004. Shelton is a former business associate of the Debtor who, as a result of his business relationships and co-ownership of certain assets with the Debtor, claims to be a creditor in this case. The two have been at odds since August, 2002. The Debtor and Shelton are involved in litigation in state court concerning, among other things, Shelton's use of the name "Hardbodies" in a competing business.

8. On March 26, 2004, Debtor's counsel submitted a Revised Disclosure Statement addressing numerous factual issues which had been raised in the case prior to that date by the chapter 7 case trustee and the United States Trustee.

9. The Debtor's pending Motion to Convert from Chapter 11 to Chapter 13 was filed on April 9, 2004, together with a Chapter 13 Plan.

10. Since the filing of his initial bankruptcy schedules and statements in May, 2003, the Debtor has filed several subsequent amendments including one on or about August 21, 2003, and another on February 11, 2004. The Debtor amended his schedules again on April 30, 2004, seeking to clarify the status of certain secured debt. On May 3, 2004, the Debtor filed an Amended Schedule F correcting a scrivener's error regarding Schedule F filed on April 30th.

11. The Debtor claims these amendments were necessary since Mr. Shelton did not provide the documentation for certain debts to Debtor's counsel until on or about April 29, 2004.

12. At hearing, the Debtor offered testimony regarding the differences between his currently filed schedules and previously filed schedules. The Debtor asked the Court to take notice of the newly filed schedules and of the Revised Disclosure Statement dated March 26, 2004, which the Court will do given the delay in the Debtor obtaining the supporting documentation.

## DISCUSSION

The question presented is whether Debtor is eligible to be a Debtor under chapter 13.

The case turns upon the question of:

Whether, for the purpose of determining chapter 13 eligibility under § 109(e), § 506(a) requires this Court to treat a debt, secured by property in which the Debtor has an undivided one-half interest, as a secured debt to the extent of Debtor's one-half interest in the property and an unsecured debt to extent of the remaining amount of the debt that the property secures.

The Court will answer that question in the affirmative. Several other potential issues have been raised by the pleadings and at hearing. Those include Debtor's good faith; the contingent or unliquidated status of certain debts; and whether Mr. Shelton's unfiled claims for contribution should be included in the Court's calculations. Because § 506(a) dictates the resolution of this case based upon the schedules filed by the Debtor, the Court will not reach the merits of those ancillary issues.

Shelton and the UST argue: (1) that the Debtor is not eligible for chapter 13 relief because his total unsecured debts exceed the allowable limits of § 109(e); and (2) that Debtor's request to convert to chapter 13 is in bad faith. As to the calculation of secured and unsecured debt, the UST and Shelton argue that the § 506(a) formula for determination of secured claims is applicable to the determination of secured and unsecured debts for the purposes of chapter 13 eligibility under § 109(e). By using that formula, the secured portion of all indebtedness that is secured by property in which the Debtor and Shelton hold a joint-ownership interest is limited to the value of Debtor's interest in the property. At the same time, they argue that the Debtor is liable for the full amount of the debt, so that the difference between the value of Debtor's interest in the property and the amount of the debt is an unsecured obligation for chapter 13 eligibility purposes. If this theory is applied, they contend that the Debtor will be ineligible for chapter 13 relief because his unsecured debts will exceed the limit set by § 109(e).

The Debtor counters that his secured and unsecured debt totals do not exceed the statutory limits of § 109(e) because § 506(a) should not be used, in this context, to bifurcate secured debts into secured and unsecured portions. In opposition to the argument for a strict reading of § 506(a), advanced by Shelton and the UST, the Debtor raises a number of policy arguments concerning the Bankruptcy Code's bias in encouraging debtors to utilize chapter 13 to pay creditors.

In initially considering this matter, the Court found two previous cases from this District to be instructive and persuasive: (1) *In re Hanson*, 275 B.R. 593 (Bankr. D.Colo.2002) by Judge Elizabeth Brown and *In re Stairs*, 307 B.R. 698 (Bankr. D.Colo.2004) by Judge Michael Romero. As in those cases, the Court's analysis here must begin with the language of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1202 n. 4 (10th Cir.2003) ("In statutory interpretation we look to the plain language of the statute and give effect to its meaning.") (quoting *Schusterman v. U.S.*, 63 F.3d 986, 989 (10th Cir.1995)). Section 109(e), in relevant part, provides

> [O]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $290,525 and noncontingent, liquidated, secured debts of less than $871,550 ... may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).[1]

In determining the Debtor's eligibility, as of the petition date, the Court must primarily look at the debtor's schedules and the timely-filed proofs of claim. *In re Hanson*, 275 B.R. at 596 (citing *In re*

---

1. The unsecured and secured debt limits recited in § 109(e) were updated as of April 1, 2004, to $307,675.00 and $922,975.00 respectively. The lower debt limits noted above are the amounts which were in effect on May 6, 2003, when this case was originally filed. Consequently, those are the limitations applicable to this case.

*Barcal,* 213 B.R. 1008, 1015 (8th Cir. BAP 1997)).

The Debtor's Amended Schedule D, filed April 30, 2004, lists total secured claims of $846,114.30. The Debtor listed one unsecured priority claim of $1,529.51 on his Amended Schedule E, filed on February 11, 2004. Finally, the Debtor's most recent Amended Schedule F, filed May 3, 2004, lists total unsecured claims of $157,861.59. None of the debts listed on Debtor's Schedules were listed as being contingent, unliquidated or disputed. The Court will use the Debtor's schedules as the primary basis of its analysis.

The Court's review of the Debtor's Amended Schedule D shows that he scheduled secured debts as follows:

| Creditor Name | Description of Collateral<br>Value of Collateral | Total Amount of Secured Claim | Unsecured Portion of Claim |
|---|---|---|---|
| Ohio Savings Bank | Residence<br>Value: $560,000.00 | $532,363.18 | $ 50.00 |
| Landrover | 2001 Landrover Discovery<br>Value: $25,000.00 | $ 27,895.09 | $ 2,895.09 |
| Key Bank | 2000 Cigarette boat<br>Value: $195,000.00 | $197,167.65 | $ 2,167.65 |
| National City | 2000 Mariah boat<br>Value: $25,000.00 | $ 46,795.31 | $21,795.31 |
| American Express Business Finance Corp. | 2000 Krystal Koach limobus<br>Value: $50,000.00 | $ 41,893.07 | $ 0.00 |
| | TOTAL SECURED DEBT | $846,114.30 | |

The dispositive issue that the Court must address is the treatment of certain jointly-owned assets and obligations listed by the Debtor on Amended Schedule D. How the two boats and the limobus are to be accounted for is in dispute by the parties. The Debtor has listed the entire debt owing on each of the two boats, in which he owns an undivided one-half interest, as essentially fully secured claims. The obligation of Limousine Plus, Inc., for the limobus, which the Debtor has guaranteed, has also been listed a fully-secured obligation. The unsecured portions of the obligations shown on Schedule D, have not been included by the Debtor on Schedule F in listing his total unsecured debt amount. The UST and Shelton argue that the Debtor has incorrectly calculated his secured debt pursuant to 11 U.S.C. § 506(a), resulting in an overstatement in the amount of his secured claims and an understatement of his unsecured claims.

To resolve these secured claim valuation questions, the Court finds helpful the case of *In re Clark,* 91 B.R. 570 (Bankr.D.Colo. 1988), by now Chief Judge Sidney Brooks. There the Court stated it "will follow the majority of courts on this issue and apply Section 506(a) in calculating the amount of secured and unsecured debt held by a Chapter 13 debtor." *Id.* at 573 (citing *Matter of Day,* 747 F.2d 405, 406 (7th Cir.1984) and others). This Court shall do likewise.

Section 506(a), in relevant part, provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such

property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Judge Brooks explained that "a creditor with a claim secured by a lien on property has a secured claim only to the extent of the value of the property[2] and an unsecured claim for the balance, or for the amount of the claim which exceeds the value of the property." *In re Clark*, 91 B.R. at 573; *see, also, In re Day*, 747 F.2d 405, 406 (7th Cir.1984) ("[E]ven where there is a lien on the debt, a creditor has a secured claim only to the extent of the value of his collateral, and an unsecured claim for the balance."); *In re Prosper*, 168 B.R. 274, 277 (Bankr.D.Conn. 1994) ("a claim is 'secured' to the extent that, after valuing the collateral and subtracting valid superior liens, there actually exists some value to secure the claim; to the extent such value does not exist, the claim is 'unsecured.' ").

■ The Court will first address the determination of the amount of the secured claims for the Cigarette boat and Mariah boat, both jointly-owned by the Debtor and Shelton.

For purposes of determining how much of a claim in an estate is secured, one must look at the creditor's interest in the "estate's interest" in the property in question. The estate's interest in property is essentially coextensive with the non-exempt property interests held by the debtor at the time of filing his or her petition in bankruptcy.

*In re Tomlinson*, 116 B.R. 80, 82 (Bankr. E.D.Mich.1990) citing *Begier v. I.R.S.*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

■ Under Colorado law, absent an agreement to the contrary, tenants in common or joint tenants are presumed to own equal shares in the property. *Sanders v. Knapp*, 674 P.2d 385, 387 (Colo.Ct.App. 1983). The parties agree that both Shelton and the Debtor own undivided one-half interests in the Cigarette boat and Debtor's amended schedules show creditor Key Bank is owed a total claim of $197,167.31. The Debtor, likewise, owns an undivided one-half interest in the Mariah boat and the schedules list a total claim owed to National City of $46,795.31. Using the language of § 506(a), a creditor's claim secured by a lien in property in which the estate has an interest is a secured claim to the extent of the value of such creditor's interest in the estate's interest in the property. The estate's interest in each of these assets is one-half the total value of those respective assets, or $195,000 ÷ 2 = $97,500 for the Cigarette boat; and $25,000 ÷ 2 = $12,500 for the Mariah boat. Therefore, the Court finds the amount of Key Bank's secured claim in the Debtor's estate to be $97,500 and National City's secured claim to be $12,500. It follows from § 506(a) that the amount of the unsecured claims held by these creditors are those respective amounts by which the value of the creditors' secured interests/claims are less than the amount of their respective, total allowed claims. The Debtor did not indicate he disputes these claims on his schedules and has not

---

**2.** The *Clark* case addressed the applicability of § 506(a) to bifurcate a secured debt into secured and unsecured components. Since it did not address the issue of jointly owned property, Judge Brooks had no occasion to differentiate between the value of the property and the value of the estate's interest in the property.

filed any subsequent objections to them, therefore, the Court finds that the amount of Key Bank's unsecured claim is $99,667.65 ($197,167.65—$97.500.00) and that the amount of National City's unsecured claim is $34,295.31 ($46,795.31—$12,500.00).

The Debtor takes the position that a "secured debt" means the face amount of any debt which is secured, to any extent, by collateral. That position is not without support in the case law and Debtor has cited the Court to a number of cases which stand generally for that proposition. *See, e.g., Branch Banking & Trust Co. v. Russell,* 188 B.R. 542 (E.D.N.C.1995); *In re Belknap,* 174 B.R. 182 (Bankr.W.D.N.Y. 1994); *In re White,* 148 B.R. 283 (Bankr. N.D.Ohio 1992); *In re Gorman,* 58 B.R. 372 (Bankr.E.D.N.Y.1986).

■ The court in *Branch Banking,* however, accepted the proposition that a debt may be secured only to the extent of the estate's interest in the subject collateral. *Branch Banking,* 188 B.R. at 544. That said, it finds that the property at issue is estate property because, even though it is owed by a corporation, that corporation is wholly owned by the debtor. Therefore, that case is supportive of this Court's analysis with respect to the bifurcation of secured debts into secured and unsecured portions. As noted below, however, this Court differs from *Branch Banking* to the extent that court holds that property which is owned by a separate corporation can be considered property of the shareholder's bankruptcy estate.

The *Belknap* court finds enough difference between "secured claim," as the term is used in § 506(a), and "secured debt," as that term is used in § 109(e) to read those as different terms and to conclude that the term "secured debt" is not defined in the Code. *Belknap,* 174 B.R. at 183. Thus, it reads "secured debt" under § 109(e) to be any debt which is secured by property. But that reading is contrary to Supreme Court guidance in *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). There, the Supreme Court said that Congress intended "that the meanings of 'debt' and 'claim' be coextensive." *Id.* at 557–58, 110 S.Ct. at 2130. Thus, this Court cannot follow the rationale of *Belknap* because it rests upon a premise which is at odds with settled law.

The *Gorman* case sidesteps any analysis of the applicability of § 506(a) because the parties' stipulated facts failed to raise that issue. *Gorman,* 58 B.R. at 374. Thus, that court rested its decision on the assumption that the debts in question were fully secured. *Id.* Certainly, in this case, the applicability of § 506(a) as been squarely presented to the Court.

■ In *White,* the court found that an obligation was a secured debt even though the property securing the debt was property of a third party. That court suggests that it would be unfair to burden the debtor with the full amount of a debt without the protection of the full value of the collateral. *White,* 148 B.R. at 286. This Court is not unsympathetic to the dilemma that a debt which, outside of bankruptcy, would be considered fully secured by the value of collateral, may be partially or wholly unsecured in bankruptcy because the collateral, or some portion of it, is not property of the bankruptcy estate. Nonetheless, to follow the analysis in *White,* this Court would have to turn a blind eye to the very specific instructions given in § 506(a).

■ The next issue for the Court is how the limobus may affect the Debtor's eligibility for chapter 13 under § 109(e). The limobus is owned by Limousine's Plus, Inc., a separate corporation owned by the

Debtor and Shelton. That corporation financed its purchase of the limobus and the current holder of the resulting obligation is American Express Business Finance Corporation. The Debtor guaranteed the corporation's debt under a guarantee contained in the Installment Sale Agreement executed at the time of the purchase on October 3, 2000. The Debtor's Amended Schedule D lists American Express as being owed a total claim of $41,893.07. Limousine's Plus owes the primary obligation to American Express and that obligation is secured by a lien on the limobus itself. No evidence was presented demonstrating that the corporation's obligation or the Debtor's guarantee are secured by any assets of the Debtor. Yet, on Schedule D, the Debtor lists American Expresses' claim as being fully secured. Using the same § 506(a) analysis done for the two boats, the Court finds that American Express holds no secured claim against the Debtor's estate. The Debtor does not own

the limobus; Limousine's Plus, Inc. does. The Debtor holds a stock interest in that corporation. He does not own an interest in the limobus itself by virtue of that stock ownership. *People v. Westfall,* 185 Colo. 110, 522 P.2d 100, 101 (1974); *Temple Hoyne Buell Found. v. Holland & Hart,* 851 P.2d 192, 197 (Colo.Ct.App.1992); *Connolly v. Nuthatch Hill Assoc. (In re Manning),* 831 F.2d 205, 207 (10th Cir.1987); *In re Albright,* 291 B.R. 538, 540 (Bankr. D.Colo.2003) (LLC a separate entity); *In re Brown,* 250 B.R. 382, 385 (Bankr.D.Idaho 2000) (property of s-corporation not property of corporation's owner). Therefore, the estate's interest in the limobus is valued at zero, and it follows that any secured claim of American Express would be as well.

The following table illustrates the Court's analysis of the secured and unsecured portions of the debts listed on Debtor's Amended Schedule D:

| CREDITOR | COLLATERAL | SECURED DEBT | UNSECURED DEBT |
|---|---|---|---|
| Key Bank | 2000 Cigarette boat | $ 97,500.00 | $ 99,667.65 |
| Landrover | 2001 Landrover | $ 25,000.00 | $ 2,895.00 |
| National City | 2000 Mariah boat | $ 12,500.00 | $ 34,295.31 |
| Ohio Savings Bank | Residence | $ 32,363.18 | $ 0.00 |
| American Express Business Finance Corp. | 2000 Krystal Koach limobus | $ 0.00 | $ 0.00 |
| | Total secured and unsecured debt derived from obligations scheduled on Amended Schedule D | $667,363.18 | $136,858.05 |

As noted above, Debtor filed an Amended Schedule E listing an unsecured priority obligation of $1,529.51. He filed an Amended Schedule F listing multiple unsecured non-priority obligations of $157,861.59. When these totals are added

to the total of unsecured debt derived from obligations listed on Amended Schedule D in the amount of $136,858.05, the Court finds that the Debtor has scheduled unsecured claims in the total amount of $296,249.15.[3] This total exceeds the allow-

---

**3.** The Court has limited its discussion to the obligations which have been scheduled by the Debtor. However, the Court also notes two

additional claims that are on file which have not been scheduled. Those are identified in the claims register as Claim # 1 in the

able unsecured debt limit of $290,525.00 prescribed in 11 U.S.C. 109(e). Thus, the Debtor is precluded from converting his case to a case under chapter 13.

 The Debtor argues that this Court should use a less restrictive interpretation of eligibility under § 109(e) to effectuate the Congressional policy of making chapter 13 an attractive alternative to liquidation under chapter 7. The Court does not doubt that it is Congress' intent that debtors be encouraged to file cases under chapter 13 rather than chapter 7. In this case, it is likely that unsecured creditors would fare better under a completed chapter 13 plan than they will under a chapter 7 liquidation. The Court recognizes that this ruling may not foster the apparent intent of Congress to encourage debtors to pay debts in chapter 13 rather than discharge them in chapter 7. But the Court is unwilling, in fact unable, to exalt those salutary policies over the clear language of the statute and the reasoned interpretation of that statutory language in the case law. The Court also recognizes that this case is essentially a business divorce between the Debtor and Shelton with all of the acrimony often attendant to such breakups. In the light of clear statutory language, policy considerations cannot be the basis to excuse, avoid or explain away the legal obligations established by the Debtor's pre-petition activities in the conduct of his business. The joint debts for the Cigarette boat, the Mariah boat and the limobus were all knowingly incurred and the Court must recognize the legal consequences of these obligations as they pertain to Debtor's eligibility for chapter 13.

Finally, at hearing, the Debtor, through counsel, admitted that he is not able to reorganize under chapter 11. The evidence demonstrated that the Debtor has not fulfilled several of his reporting obligations as a Debtor–in–Possession. Therefore, it is

**ORDERED** that Debtor's Motion to Convert Case from Chapter 11 to Chapter 13 is hereby DENIED; it is further

**ORDERED** that the motions by the United States Trustee and by Shelton to convert this case to a case under chapter 7 are hereby GRANTED.

---

amount of $500.00 and Claim # 9 in the amount of $1,614.54. Because it was not necessary to the result reached by the Court, it has made no determinations with respect to those unscheduled claims.